DA 07-0257

FILED

December 8 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 417

BRAD and ADINA ROE, ROBERT HANNEMAN,
DOUGLAS MILLER, DANA TATUM, f/k/a DANA
SKIFTUN, COREY WILLIAMSON and MICHAEL
GEORGE, and GEOFFREY EASTON,

        Plaintiffs and Appellants,

    v.

CITY OF MISSOULA, acting through the Members
of the MISSOULA CITY COUNCIL, JOHN ENGEN,
HEIDI KENDALL, ED CHILDERS, ANN KAZMIERCZAK,
STACY RYE, LOU ANN CROWLEY, JERRY BALLAS,
MYRT CHARNEY, BOB LOVEGROVE, JACK REIDY
CLAYTON FLOYD, JR., MISSOULA COUNTY,
MISSOULA COUNTY CLERK AND RECORDER,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV 04-760
                Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Thomas C. Orr; Orr Law Offices, P.C.; Missoula, Montana

        For Appellees:

                Douglas J. Wold; Wold Law Firm, P.C.; Polson, Montana

                      Submitted on Briefs:  October 22, 2008

                                  Decided:  December 8, 2009

Filed:

             _____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Brad Roe, Adina Roe, and other named plaintiffs (Roes) appeal two orders of the Fourth Judicial District Court, in and for Missoula County. The first order granted summary judgment to the City of Missoula on Roes' claim seeking declaratory judgment that the Missoula City Council (City Council) may not unilaterally undertake review of applications for exemption from subdivision review. The second order granted summary judgment to the City on Roes' constitutional and "tortious violation of statutory duties" claims. We affirm.

¶2 We restate the issues as follows:

¶3 Did the District Court err by granting the City's motions for summary judgment without expressly concluding that no genuine issues of material fact existed?

¶4 Did the District Court err by granting summary judgment to the City on Roes' claim seeking declaratory judgment that the City Council was not authorized to unilaterally undertake review of applications for exemption from subdivision review?

¶5 Did the District Court err by granting summary judgment to the City on Roes' claims of "tortious violation of statutory duties," equal protection, takings, and the right of participation?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6 The claims at issue arise from the City Council's action of unilaterally initiating review of applications seeking an exemption from requirements of the Montana Subdivision and Platting Act (MSPA) for relocation of a common boundary line or lot

2

aggregation, instead of allowing the review to be conducted as provided by the Missoula City Subdivision Regulations (City Regulations).

¶7 The procedure, pursuant to the City Regulations, for review of requests seeking exemptions from the MSPA for land divisions within the City of Missoula, was initiated by filing an application with the Missoula City Attorney. The City Attorney reviewed the applications for the existence of circumstances requiring referral of the request to the City Council for further review. A primary consideration of the City Attorney's review was whether a proposed boundary line relocation or lot aggravation would increase the number of lots. As a matter of practice, if the number of lots upon approval of the application would be the same or less than the number of existing lots, the City Attorney generally approved the exemption application and referred the application to the Department of Public Works and Missoula City/County Office of Planning and Grants for final approval.

¶8 In March of 2004, Brad and Adina Roe submitted an application to relocate the boundary line on a rental property they own at 636 Evans Avenue in the City of Missoula. Brad and Adina Roe's property consists of two long and narrow contiguous lots, each approximately 30 feet by 130 feet, located within the University area. The lots share a common boundary running north and south, with a house straddling the common boundary, and each lot has access to both the street and alley. Brad and Adina Roe's application sought to move the common boundary ninety degrees, relocating the boundary so the house no longer straddled it. This would result in two, relatively square lots, with the northern lot having access only to the alley, and the southern lot having

3

access only to the street. A consequence of the boundary relocation would be the creation of one vacant lot capable of being sold separately and serving as a building site.

¶9 After receiving complaints from neighboring property owners about Brad and Adina Roe's application, members of the City Council instructed the City Attorney to turn the application over to the Council. The City Attorney thus did not have an opportunity to review the application pursuant to the City Regulations and determine whether to either forward it to the Department of Public Works and Missoula City/County Office of Planning and Grants for final approval or forward it to the City Council for further review. The City Council conducted hearings on Brad and Adina Roe's proposed boundary line relocation and on July 12, 2004, rejected the exemption request on the basis that it was an attempt to improperly evade subdivision review.

¶10 On August 19, 2004, Brad and Adina Roe filed suit against the City, seeking a declaratory judgment that the City had violated review procedures under the City Regulations, and bringing multiple claims and a request for issuance of a writ of prohibition or mandate based thereon. Brad and Adina Roe claimed they were damaged by the City Council's intervention in the review process because their application would have been approved, as it did not increase the number of lots. The District Court bifurcated the claim for a declaratory judgment from the remaining claims.

¶11 In the following months, other parties filed similar applications for exemption from the MSPA and City Regulations for boundary line relocations or lot aggregations,[1] and the City Council denied those by the same procedures and on the same basis as they had denied Brad and Adina Roe's application. These denials resulted in the filing of eight additional lawsuits.[2] The District Court consolidated all nine cases into one.[3]

¶12 The City and Roes both sought summary judgment on Roes' declaratory claim that the City Regulations do not permit the City Council to unilaterally review applications for boundary line relocation or lot aggregation exemptions from subdivision review. The District Court, in its October 4, 2005 Opinion and Order,[4] concluded the City acted properly by denying all of the applications because none of them qualified for an exemption as either a boundary line relocation or lot aggregation, and granted summary judgment to the City. The City then filed a second motion for summary judgment on the

---

[1] All applicants sought exemption from subdivision review under the relocation of a common boundary exemption, while some of the applicants also claimed an exemption under the lot aggregation exemption. We consider the claims made under both exemptions.

[2] These additional cases are the following: *Roe v. City of Missoula*, No. DV-04-810 (Mont. 4th Dist. Feb. 7, 2007); *Skiftun v. City of Missoula*, No. DV-04-865 (Mont. 4th Dist. Feb. 7, 2007); *Alpine Builders Zepeda Homes, Inc. v. City of Missoula*, No. DV-04-1040 (Mont. 4th Dist. Feb. 7, 2007); *Alpine Builders Zepeda Homes, Inc. v. City of Missoula*, No. DV-04-1041 (Mont. 4th Dist. Feb. 7, 2007); *George v. City of Missoula*, No. DV-04-1070 (Mont. 4th Dist. Feb. 7, 2007); *Easton v. City of Missoula*, No. DV-04-1140 (Mont. 4th Dist. Feb. 7, 2007); *Miller v. City of Missoula*, No. DV-04-1141 (Mont. 4th Dist. Feb. 7, 2007); and *Hanneman v. City of Missoula*, No. DV-05-206 (Mont. 4th Dist. Feb. 7, 2007).

[3] Although the District Court resolved all nine consolidated cases, only seven are before us on appeal. *Alpine Builders Zepeda Homes, Inc*, No. DV-04-1040, and *Alpine Builders Zepeda Homes, Inc.*, No. DV-04-1041, were not appealed.

[4] The District Court amended its October 4, 2005 Opinion and Order on February 2, 2007, to correct an omission of a portion of the City Regulations at issue in the opinion. The amended opinion adds the language of City Regulation 8-4(4)(D) but otherwise is identical to the original October 4, 2005 Opinion and Order.

Roes' remaining claims of "tortious violation of statutory duties," equal protection, takings, and the right of participation. The District Court, in its February 7, 2007 Opinion, granted the City's motion.

¶13 Roes appeal.

## STANDARD OF REVIEW

¶14 "We review a district court's grant or denial of a motion for summary judgment de novo, using the same criteria applied by the district court under M.R. Civ. P. 56." *Corporate Air v. Edwards Jet Ctr.*, 2008 MT 283, ¶ 24, 345 Mont. 336, 190 P.3d 1111 (citation omitted). Under Rule 56(c), judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Corporate Air*, ¶ 24. "A material fact is a fact that involves the elements of the cause of action or defenses at issue to an extent that necessitates resolution of the issue by a trier of fact." *Corporate Air*, ¶ 24 (quoting *Arnold v. Yellowstone Mt. Club, LLC*, 2004 MT 284, ¶ 15, 323 Mont. 295, 100 P.3d 137). "The party moving for summary judgment has the initial burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law." *Corporate Air*, ¶ 25 (citing *Hughes v. Lynch*, 2007 MT 177, ¶ 8, 338 Mont. 214, 164 P.3d 913). If the moving party meets this burden, then the "burden . . . shifts to the nonmoving party to establish that a genuine issue of material fact does exist." *Corporate Air*, ¶ 25 (citing *Hughes*, ¶ 8). If no genuine issues of material fact exist, the district court "then determines whether the moving party is entitled to

6

judgment as a matter of law." *Corporate Air*, ¶ 25 (citing *Hughes*, ¶ 8). We review a district court's determination of judgment as a matter of law for correctness. *Corporate Air*, ¶ 25 (citing *Hughes*, ¶ 8).

¶15 Our standard of review pertaining to a declaratory judgment is to determine if the court's interpretation of law is correct. *Karlson v. Rosich*, 2006 MT 290, ¶ 7, 334 Mont. 370, 147 P.3d 196 (quoting *Skinner v. Allstate Ins. Co.*, 2005 MT 323, ¶ 10, 329 Mont. 511, 127 P.3d 359).

¶16 "If we reach the same conclusion as the district court, but on different grounds, we may nonetheless affirm the district court's judgment." *Germann v. Stephens*, 2006 MT 130, ¶ 21, 332 Mont. 303, 137 P.3d 545 (citing *Safeco Ins. Co. of Am. v. Liss*, 2000 MT 380, ¶ 25, 303 Mont. 519, 16 P.3d 399).

## DISCUSSION

¶17 ***Did the District Court err by granting the City's motions for summary judgment without expressly concluding that no genuine issues of material fact existed?***

¶18 Roes argue the District Court erred in analyzing the motions for summary judgment because it failed to expressly conclude no genuine issues of material fact existed. The City responds that the court's opinions were "lengthy, detailed and more than adequately state with 'particularity' the 'rationale' for granting the City summary judgment." Both parties cite *Cole v. Flathead Co.*, 236 Mont. 412, 419, 771 P.2d 97, 101-02 (1989), for the rule that "[a] district court is required under Rule 52(a), M.R.Civ.P. in granting a motion under Rules 12 or 56 to specify the grounds therefore

7

with sufficient particularity as to apprise the parties and the appellate court of the rationale underlying the ruling."

¶19 In its Amended October 4, 2005 Opinion and Order, addressing the declaratory judgment, the District Court outlined the legal standards for summary judgment, analyzed the applicable statutes and regulations, and addressed each of the parties' arguments. The District Court did likewise in its February 7, 2007 Opinion and Order. Well covering the governing law and legal arguments, the court's analysis was also clearly premised upon an absence of conflict in material facts, even though it did not expressly say so. A court need not include "magic" language as long as it provides sufficient particularity to understand its rationale for granting summary judgment. We conclude the District Court's order did so.

¶20 ***Did the District Court err by granting summary judgment to the City on Roes' claim seeking declaratory judgment that the City Council was not authorized to unilaterally undertake review of applications for exemption from subdivision review?***

¶21 The Roes argue that the City Regulations precluded the City Council from unilaterally undertaking review of their applications, without first receiving a referral from the City Attorney. They argue the District Court erred by disregarding this procedural claim and instead focusing on the merits of their exemption applications. Roes do not argue that the City Council erred in reaching the substantive determination that their applications had the purpose of evading subdivision review.[5]

---

[5] We need not address the process after the City Council obtained the applications because the Roes agreed in the District Court, and do not argue on appeal, that the City Council provided them with due process after the point at which the Council obtained the applications from the City Attorney.

8

¶22 The City counters by arguing the City Council is vested with the authority to unilaterally review applications under the circumstances of this case, and that the District Court correctly resolved Roes' procedural claim by concluding the subdivision exemptions did not apply, thereby failing to trigger the approval process the Roes claim they were deprived of.

¶23 The MSPA is codified at Title 76, Chapter 3 of the Montana Code Annotated under "Local Regulation of Subdivisions" (2003). The MSPA requires that all subdivisions undergo approval prior to their transfer. *Riverview Homes II, Ltd. v. Canton*, 2001 MT 309, ¶ 14, 307 Mont. 517, 38 P.3d 848 (citing §§ 76-3-104, -301, -302, MCA). A subdivision is defined as "a division of land or land so divided that it creates one or more parcels containing less than 160 acres that cannot be described as a one-quarter aliquot part of a United States government section . . . and includes any resubdivision . . . ." Section 76-3-103(16), MCA; *see also* § 76-3-104, MCA. Some subdivisions, despite technically defined as such, are nevertheless "not subdivisions under this chapter" and are exempted from review under the MSPA. Section 76-3-207(1), MCA. The exemptions pertinent to this case state that "unless the method of disposition is adopted for the purpose of evading [the MSPA]" a division of land for the "relocation of common boundaries and the aggregation of lots" is not subject to review under the MSPA. Section 76-3-207(1), MCA.

¶24 The Legislature delegated authority for review of subdivisions by requiring that "the governing body of every county, city, and town shall adopt and provide for the enforcement and administration of subdivision regulations . . . ." Section 76-3-501,

9

MCA. The City Council, in response and pursuant to its delegated authority, originally enacted the City Regulations on July 8, 1974.[6]

¶25 Under the City Regulations, "[a]ll divisions or subdivisions of land are subject to the surveying, plat filing and review processes set forth in the [City Regulations] unless specifically exempt . . . ." City Regulation 8-1. Article 8 of the City Regulations sets forth the process by which a claimant may apply for an exemption from subdivision review. Of the five exemptions provided, two are pertinent to this appeal, including "lot aggregation" and "relocation of common boundary." City Regulation 8-4(3)(C), (D). Lot aggregation is "a division of land which redesigns, or rearranges five (5) or fewer lots or which aggregates multiple lots into five (5) or fewer lots." City Regulation 8-4(3)(C). Relocation of a common boundary is a "division made for the purpose of relocating common boundary lines between adjoining properties and not for the purpose of creating a new parcel of land transferable to anyone other than an adjoining property owner." City Regulation 8-4(3)(D).

¶26 Applicants for an exemption "must request a determination of [their] entitlement to use the exemptions claimed . . . by submitting a completed Affidavit and sketch of the proposed division(s) to the Designated Review Agent in the City Attorney's Office." City Regulation 8-4(2). Submission of affidavits and sketches, along with surveys, deeds, or other documents, to the City Attorney is the first step in the application process. City Regulation 8-4(4)(A). The City Regulations provide that the application must be

---

[6] The language in the City Regulations has been amended numerous times. The parties submitted a Joint Appendix to the District Court containing the version of the City Regulations as amended on July 26, 1999. This is the version we review on appeal.

referred to the City Council if the City Attorney's review reveals that any of the circumstances outlined in City Regulation 8-4(4)(E)[7] exist. If such a "red flag" is evident from the City Attorney's review, the application "shall be referred to the governing body for their determination on whether the use of exemptions is an evasion of the Subdivision Act." City Regulation 8-4(4)(B). One "red flag" necessitating referral to the City Council is when "[t]he arrangement of the proposed divisions suggests an intention to create multiple lots." City Regulation 8-4(4)(E)(1)(e). This is consistent with the prohibition upon the use of a boundary line relocation exemption "for the purpose of creating a new parcel of land transferable to anyone other than an adjoining property owner." City Regulation 8-4(3)(D).

¶27 The District Court ruled that Roes' applications failed to qualify for either the lot aggregation or boundary line relocation exemptions. As to lot aggregation, the District Court reasoned the exemption was "illogical" because it essentially defined "a boundary line relocation and not a lot aggregation." The District Court concluded the boundary line relocation had no application because the Roes intended to create a "new parcel of land transferable to anyone other than an adjoining property owner," and thus directly contravened the requirement that a boundary line relocation may "*not* [be] for the purpose of creating a new parcel of land transferable to anyone other than an adjoining

_____

[7] The City Regulations in effect at the time of these applications contained a typographical error because City Regulation 8-4(4)(E) did not exist, despite City Regulation 8-4(B)'s reference to it. Both parties have stipulated City Regulation 8-4(4)(D)(5) should have been numbered City Regulation 8-4(4)(E). Both parties corrected the error by renumbering City Regulation 8-4(4)(D)(5) to City Regulation 8-4(4)(E) and submitted the corrected version to the District Court in a Joint Appendix.

property owner." City Regulation 8-4(3)(D) (emphasis added). Thus, the District Court held that Roes' applications should have been denied at the outset by the City Attorney and were not entitled to any particular process. Even though the City Council conducted a hearing and review, the District Court concluded that this was of no consequence, as the City Council ultimately "arrived at the correct result" and Roes were not damaged.

¶28 We affirm the decision of the District Court, but under a slightly different rationale. The Roes properly applied for a determination of their entitlement to the boundary line relocation and lot aggregation exemptions under City Regulation 8-4(2), (4)(A). The City Attorney was to determine whether the applications qualified for use of the exemptions. City Regulation 8-4(2), (4)(A). Because the City Council intervened, the City Attorney did not have an opportunity to determine if the applications qualified for an exemption. Further, the City Attorney did not have the opportunity to determine if any "red flags" existed under City Regulation 8-4(4)(E), necessitating referral of the applications to the City Council under City Regulation 8-4(4)(B). Although the District Court concluded that Roes were not entitled to this process, we believe they were indeed entitled to the review procedure as set forth in the City Regulations, and that the City Council's unilateral actions violated that process.

¶29 However, we conclude that this error was harmless. Despite the deviation from stated procedure, Roes' attempt to use the lot aggregation and boundary relocation exemptions was doomed and should have been denied in any event. Even if the City Attorney had determined the applications qualified for an exemption, the City Regulations further required the City Attorney to review for "any of the circumstances

12

[i.e. red flags] listed in Section 8-4(4)-(E)" requiring referral to the City Council, including whether the proposed subdivision merely "suggest[ed] an intention to create multiple lots." City Regulation 8-4(4)(B), (E)(1)(e). The subject properties, which were narrow lots functioning as a single lot for a house or other improvements straddling the common boundary line, would have been changed, if approved, into independently functioning lots, one of which could have been sold as a vacant lot to another party as a new building site. At a minimum, Roes' applications *suggested* an intention to create an additional functional lot which could be sold to a third party, and the City Regulations thus required the City Attorney to refer the application to the City Council for a determination of whether "the use of exemptions is an evasion of the Subdivision Act." City Regulation 8-4(4)(B), (E)(1)(e). That is what ultimately occurred here, with the City Council finding an evasive intent. Under these circumstances, the City Council's premature intervention was harmless. Roes cannot establish that the City Council's error impacted their "substantial rights" or that they were damaged. *See Winslow v. Mont. Rail Link, Inc.*, 2005 MT 217, ¶ 25, 328 Mont. 260, 121 P.3d 506 (citing *State v. DeTienne*, 218 Mont. 249, 257, 707 P.2d 534, 539 (1985)).

¶30 Roes additionally argue the District Court erred in its determination that their applications did not qualify as a relocation of common boundary exemption because in doing so the court decided the material fact that their subjective intent was to "creat[e] a new parcel of land transferable to anyone other than an adjoining property owner." *See* City Regulation 8-4(3)(D). Even assuming *arguendo* that Roes' argument is correct, it is of no consequence to our resolution of the appeal. The Roes' challenge is to the

13

process—the City Council's unilateral review of the applications—which we have concluded is harmless because the Council should have reviewed the applications in any event. Whether or not the Roes' applications qualified for the exemptions, they should have been forwarded to the City Council because they "suggested" an intention to improperly evade subdivision review. Thus, it is not necessary for us to reach the question of whether the applications actually qualified for an exemption, and whether it was improper to consider questions of subjective intent.

¶31 ***Did the District Court err in granting summary judgment to the City on Roes' claims of tortious violation of statutory duties, equal protection, takings, and the public's right to participation?***

¶32 The Roes make a general, overarching argument in challenge to the District Court's dismissal of all their additional claims to the effect that the District Court erred by relying upon the analysis in its first order granting summary judgment, discussed under Issue 2, above. Because we have affirmed the District Court under a different rationale, we need not again take up that argument. We address below only the specific arguments the Roes make for each claim.

¶33 **A. Tortious Violation of Statutory Duties**

¶34 The Roes stated a claim against the City for "tortious violation of statutory duties," claiming the City Council knowingly violated statutes and its regulations. The District Court, at the suggestion of the City, concluded that Montana law did not recognize such a claim, and instead analyzed it as one for equitable estoppel. The District Court denied the claim, reasoning that equitable estoppel does not apply to legal misrepresentations. *See City of Whitefish v. Troy Town Pump, Inc.*, 2001 MT 58, ¶ 19, 304 Mont. 346, 21

14

P.3d 1026 (Equitable estoppel "requires a representation of fact, not law."). The Roes argue on appeal the District Court erred in converting their claim to equitable estoppel and argue that their claim "sets out—at a minimum—a colorable negligence or negligence per se claim against the City Council."

¶35 Even assuming *arguendo* that a claim for "tortious violation of statutory duties" is a cognizable negligence claim under Montana law, a negligence claim requires proof of damages. *Gonzales v. City of Bozeman*, 2009 MT 277, ¶ 19, 352 Mont. 145, 217 P.3d 487 (citing *Lopez v. Great Falls Pre-Release Servs.*, 1999 MT 199, ¶ 18, 295 Mont. 416, 986 P.2d 1081). As indicated above, Roes sustained no damages. However Roes characterize their claim, they are unable to prove damages and their claim was properly denied by summary judgment.

¶36 **B. Equal Protection**

¶37 The Roes brought a civil rights claim, pursuant to 42 U.S.C. § 1983 and the Montana Constitution, alleging the City violated City Regulations by unilaterally reviewing their applications and, further, interpreted the City Regulations differently, that is, more stringently, for their applications than for past exemption applications. The Roes argue that the District Court erred in granting summary judgment to the City on their equal protection claim because the court did not consider the proper legal test and relevant facts. The City responds that the District Court's decision properly concluded the City had not treated similar groups differently.

¶38 The Roes' equal protection arguments are largely unclear and poorly supported. *See Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 38, 350 Mont. 516, 212 P.3d 264

15

("[t]he argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefore, with citations to the authorities . . .," quoting M. R. App. P. 12(1)(f)). To the extent we can glean Roes' theory from their briefing, their claim fails to properly allege a discriminatory purpose. Both the Fourteenth Amendment to the U.S. Constitution and Article II, Section 4, of the Montana Constitution guarantee equal protection to all persons. *State v. Price*, 2002 MT 229, ¶ 31, 311 Mont. 439, 57 P.3d 42 (citations omitted). Equal protection "insure[s] that persons are not made the subject of arbitrary and discriminatory state action." *State v. Koehn*, 1998 MT 234, ¶ 19, 291 Mont. 87, 966 P.2d 143 (citing *Godfrey v. Mont. State Fish & Game Commn.*, 193 Mont. 304, 306, 631 P.2d 1265, 1267 (1981)). When setting forth a claim, "[i]t is a basic equal protection principle that the invidious quality of a law claimed to be discriminatory must ultimately be traced to an impermissibly discriminatory purpose." *Price*, ¶ 41 (citing *State v. Spina*, 1999 MT 113, ¶ 85, 294 Mont. 367, 982 P.2d 421); *Wash. v. Davis*, 426 U.S. 229, 240, 96 S. Ct. 2040, 2048 (1976)). Bald assertions of equal protection claims absent a discriminatory purpose are appropriately disposed of through summary judgment. *See Gudmundsen v. State ex rel. Mont. State Hosp. Warm Springs*, 2009 MT 56, ¶¶ 26, 32, 349 Mont. 297, 203 P.3d 813 (affirming summary judgment for a bald constitutional claim) (citation omitted); *Peris v. Safeco Ins. Co.*, 276 Mont. 486, 494, 916 P.2d 780, 785 (1996) (refusing to consider a "bald assertion" of constitutional infirmity). Roes' argument that the District Court did not consider the proper legal tests or facts is a byproduct of the Roes' failure to provide the District Court with such analysis. Neither this Court nor the district courts can formulate proper legal

16

arguments for parties. *Gudmundsen*, ¶ 26 (citation omitted). We conclude the District Court did not err.

¶39 **C. Takings**

¶40 The Roes brought two takings claims. The first was a civil rights claim pursuant to 42 U.S.C. § 1983, alleging the City took their property in violation of the Fifth and Fourteenth Amendments without due process of law or just compensation. Similarly, Roes brought their second takings claim under Article II, Sections 17 and 29, of the Montana Constitution, also alleging a taking without due process of law or just compensation.

¶41 The Roes argue the District Court erred in granting the City summary judgment on their federal and state takings claims because the court "fail[ed] to consider the applicable rule of law and the relevant facts for a regulatory taking." The Roes briefly cite *Lucas v. S.C. Costal Council*, 505 U.S. 1003, 112 S. Ct. 2886 (1992), in support of their claims.

¶42 The U.S. Constitution, applied to the States through the Fourteenth Amendment, provides, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 711, 119 S. Ct. 1624, 1639 (1999) (citation omitted). The Montana Constitution similarly provides:

> Eminent Domain. Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner. In the event of litigation, just compensation shall include necessary expenses of litigation to be awarded by the court when the private property owner prevails.

17

Mont. Const. art. II, § 29. Under either constitution, a taking occurs "only when a constitutionally protected property interest is at stake." *Seven Up Pete Venture v. State*, 2005 MT 146, ¶ 26, 327 Mont. 306, 114 P.3d 1009 (citations omitted); *see also Lucas*, 505 U.S. at 1027, 112 S. Ct. at 2899 ("Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if . . . the proscribed use interests were not part of [the] title to begin with.").

¶43 Even assuming Roes sustained the loss of all economically beneficial use of their property, which is highly doubtful, they never possessed a "right" to obtain an exemption from subdivision review in the first place. Similar to the plaintiffs in *Seven Up Pete Venture*, the Roes' takings claims essentially sound in the lost *opportunity* to obtain an exemption from subdivision review. *See Seven Up Pete Venture*, ¶ 22. Rights only manifest in opportunities, however, if "the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." *Seven Up Pete Venture*, ¶ 28 (citing *Kiely Constr. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 28, 312 Mont. 52, 57 P.3d 836; *Gardner v. Baltimore Mayor and City Council*, 969 F.2d 63, 68 (4th Cir. 1992)). As noted from the above discussion, significant discretion rested with city officials to determine whether a proposed subdivision had a purpose to improperly evade subdivision review. Because there were no genuine issues of material fact and the Roes possessed no right to obtain an exemption from subdivision review, we affirm the District Court's grant of summary judgment to the City on the Roes' takings claims.

¶44    **D.  Public's Right of Participation**

¶45    The Roes present the issue of whether the District Court erred in granting summary judgment on their claim that the City violated the public's right of participation, but nowhere in their briefs do they discuss this issue.  The Roes have therefore waived their claim, and we need not consider it further.  *See Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 82, 337 Mont. 411, 162 P.3d 106 (citations omitted); M. R. App. P. 12(1)(f).

¶46    Affirmed.

/S/ JIM RICE


We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS