FILED

11/22/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0051

DA 16-0051

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 301

---

J & C MOODIE PROPERTIES, LLC, a
Montana limited liability company,

      Plaintiff and Appellee,

  v.

STANLEY DECK, JUNE DECK, DICKINSON
BROADCAST CORPORATION, a North Dakota
corporation, DAVE CAMPBELL, d/b/a CAMPBELL
REALTY, a Montana company, HESSLER
ARCHITECTS, a Montana corporation, NCI
ENGINEERING, INC., a Montana corporation,
EVERSON-CORDEIRO ENGINEERING DESIGN,
a Montana company, MOUNTAIN STATES CONCRETE,
a Montana company, WADSWORTH BUILDERS COMPANY,
INC., a Montana corporation, ALPHA PARTNERS LLC,
a Montana limited liability company, NUCOR BUILDING
SYSTEMS UTAH LLC, SCOTTSDALE INSURANCE
COMPANY, and JOHN DOES 1-99,

      Defendants and Appellants.

---

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and For the County of Cascade, Cause No. BDV 2012-0751
                Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

      For Appellanst:

           Bradley J. Luck, Kathleen L. DeSoto, Garlington, Lohn & Robinson,
           PLLP, Missoula, Montana

           Robert H. King, Jr., Dentons US LLP, Chicago, Illinois
           (*Attorneys for Scottsdale Insurance Company*)

      For Appellee:

           James C. Cumming, Cumming Law Firm, Helena, Montana

Submitted on Briefs:  September 7, 2016

Decided:  November 22, 2016

Filed:

_____
                  Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    The above-named Appellants (collectively Defendants), including Scottsdale Insurance Company (Scottsdale), appeal the decision of the Eighth Judicial District Court, Cascade County, granting summary judgment in favor of J & C Moodie Properties, LLC (Moodie) on issues related to Scottsdale's duty to defend. We affirm in part, reverse in part, and remand for further proceedings.

¶2    We consider the following issues:

*1. Did the District Court err by holding that Scottsdale breached its duty to defend its insured?*

*2. Did the District Court err by holding there were no grounds for a reasonableness hearing regarding the stipulated judgment?*

*3. Did the District Court err by ruling that Scottsdale was not entitled to conduct discovery regarding the reasonableness determination?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    Moodie hired Haynie Construction (Haynie), owned by Kyle Haynie, as general contractor to construct a building for Moodie's farm equipment dealership. Haynie's commercial business was insured by two different insurance companies during the course of Haynie's work on the project. Mountain West Farm Bureau (Farm Bureau) insured Haynie under a policy that was in effect from April 22, 2008, to April 22, 2009. Scottsdale insured Haynie under a policy that was effective from April 29, 2009 onward, until it was cancelled on February 18, 2010. The Scottsdale policy contained a $1,000,000 limit of liability per occurrence, subject to a $2,000,000 aggregate limit. There was no overlap in the effective periods of the two policies insuring Haynie.

3

¶4     In August 2008, Moodie entered into a buy/sell agreement to purchase a parcel of land on which to build the dealership building, and the transaction closed on July 18, 2009. Haynie conducted some construction work during the effective period of the Farm Bureau policy. The building project was completed in September 2009, while the Scottsdale policy was in effect.

¶5     In October 2012, Moodie filed the instant action against Haynie, asserting various construction defect claims regarding the construction project. Moodie filed its second amended complaint in February 2013, asserting intertwining claims against Haynie, Kyle Haynie personally, and Russell Country Realty, which was partly owned by Kyle Haynie.[1]

¶6     According to the affidavit of Jon Reamer (Reamer Affidavit), a Director of Claims for Scottsdale, Scottsdale received a Notice of Claim "indicating Moodie Implement Company had presented a claim against Haynie in the captioned District Court action" on March 6, 2013. Scottsdale acknowledged receipt of the claim the same day.

¶7     The Reamer Affidavit further attests to "several contacts" between Scottsdale and Kyle Haynie, on behalf of Haynie, following the receipt of the Notice of Claim. First, on March 21, 2013, Kyle Haynie informed Scottsdale that Farm Bureau had filed an Answer on behalf of Haynie and assigned an incident number to the claim. Second, on March 25, 2013, Kyle Haynie informed Scottsdale that his first contract "as general contractor on the Moodie Implement project was dated February 15, 2009, prior to the inception of the

---

[1] Russell Country Realty was added as a party defendant by Moodie's third amended complaint, filed on August 4, 2014.

4

Scottsdale coverage." Scottsdale averred that, during this second conversation, Kyle Haynie was advised, and he acknowledged, that Scottsdale's policy did not cover operations prior to April 29, 2009, and that Kyle Haynie advised Scottsdale that Farm Bureau "would be defending him in the action." Kyle Haynie attested that he "never told Scottsdale or anyone else that [he] agreed Scottsdale does not owe a duty to defend [his] company."

¶8 On May 20, 2013,[2] Scottsdale sent Haynie a letter formally denying coverage. The letter advised Haynie that Scottsdale had "determined that there is no coverage available for the presently pending claims against you in this matter." The letter stated the "Designated Operations Exclusion" of Scottsdale's policy excluded coverage for damages "arising out of any and all operations prior to the inception of this policy. . . . Therefore, this exclusion will act to bar coverage for this matter and Scottsdale will not defend and/or indemnify you for this matter." The letter concluded by advising Haynie that if it believed "this coverage determination to be inaccurate, or that the claim has been wrongfully disclaimed or rejected in whole or in part, you [Haynie] may have the matter reviewed by the State Department of Insurance within the pertinent jurisdiction," and requested that Haynie provide any information or documentation to Scottsdale if the facts or circumstances changed. Scottsdale presented no evidence that it took any additional

---

[2] The letter's stated date is May 20, 2012, but the parties stipulated that the correct date was May 20, 2013.

actions in furtherance of Haynie's defense.[3] Scottsdale's next action of any kind was its notice of appearance in this litigation, filed May 19, 2015.

¶9 By discovery responses dated June 20, 2013, Haynie disclosed to Moodie that Scottsdale had refused to defend and indemnify Haynie, and that Farm Bureau was defending the action, but would be issuing a reservation of rights letter. That same day, Farm Bureau provided the letter to Haynie, advising that it would provide a defense through attorney Curt Drake (Drake) because some of the claims alleged may fall under the Farm Bureau policy. However, the letter stated as follows:

> Mountain West Farm Bureau Mutual Insurance Company expressly reserves its rights with respect to the following questions concerning its duty to provide defense and indemnity under the Businessowners [sic] policies issued to you:
>
> 1. There is a question as to whether some or all of the damages alleged in the lawsuit were the result of bodily injury or property damage caused by an occurrence as those terms are defined in the policy.
>
> 2. There is a question as to whether some or all the claims asserted in the Second Amended Complaint fall within the scope of the policy's coverage.
>
> 3. There is a question as to whether the following policy language precludes coverage: [policy provisions regarding, in particular, the "your work" exclusion and whether the damages fall within the definition of "property damage."]

Farm Bureau noted that "Some potential coverage exists for the claim of negligence. That being said, some or all of the damages alleged in the Second Amended Complaint

---

[3] Counsel for Scottsdale stated during summary judgment oral argument that there was direct contact between Farm Bureau and Scottsdale, but there is no sworn evidence to that effect, and thus is not part of the summary judgment record.

may be excluded by the policy provisions cited above." The letter concluded by informing Haynie:

> As noted above, some of the damages asserted against you may not give rise to coverage. Consequently, this presents the potential for personal liability on your part, and we reserve the right to deny coverage to you, and anyone claiming coverage under your policy, for any judgment falling outside the policy's coverage.

Drake represented Haynie throughout the litigation and there is no dispute he provided a competent defense.

¶10 On February 9, 2015, Haynie and Moodie jointly filed a stipulated settlement that recited (1) Moodie's claims against Haynie; (2) Moodie's expert witnessess's opinion that the project was negligently constructed and that Moodie suffered $5,650,000 in damages; (3) Scottsdale's refusal to provide a defense or coverage; (4) Haynie's resulting substantial risk, including financial insolvency; (5) the settlement reached between Moodie and Haynie for $5,650,000; (6) Moodie's agreement to file a covenant not to execute on such judgment; and (7) Haynie's agreement to assign all its rights and interest in the Scottsdale policy to Moodie. Kyle Haynie attested that, as a result of Scottsdale's refusal to provide a defense, he had "settled with Moodie to eliminate the severe risks to me and my business."

¶11 The District Court entered judgment in the case against Haynie for $5,650,000 on March 3, 2015, and ordered that Moodie was entitled to recover all costs, fees, and interest as allowed by law. On March 12, 2015, Moodie and Haynie jointly filed a covenant not to execute on the judgment and claims. In the covenant, Moodie agreed to

not enforce the judgment against Haynie, Kyle Haynie personally, or Russell Country Realty, and Haynie assigned all rights and interest in the Scottsdale policy to Moodie.

¶12 Moodie filed a notice of entry of judgment on March 12, 2015. On March 24, 2015, Moodie filed its fourth amended complaint, which named Scottsdale as a defendant and requested a declaratory judgment against Scottsdale. The declaratory judgment count alleged that Scottsdale had breached its duty to defend, Haynie had entered a stipulated judgment due to Scottsdale's failure to defend, the judgment was reasonable and negotiated in good faith, and Scottsdale was liable for the stipulated judgment.

¶13 Scottsdale moved for summary judgment to dismiss the declaratory judgment count and sought discovery regarding the reasonableness of the settlement. Moodie cross moved for summary judgment on the same count and requested a protective order to bar discovery. Scottsdale argued that it was in an excess position and did not have a duty to defend under its excess coverage clause,[4] it did not unjustifiably breach its duty to defend, the stipulated judgment was not reasonable and could not survive summary judgment, and it was entitled to discovery regarding the reasonableness of the stipulated judgment.

¶14 The District Court ruled in favor of Moodie on all issues, holding that Scottsdale had a duty to defend Haynie, Scottsdale breached that duty unjustifiably, the stipulated judgment was reasonable, and Scottsdale was not entitled to discovery regarding the

---

[4] Scottsdale's position regarding its duty to defend changed from the grounds stated in its May 20, 2013 denial letter. The letter stated that the "Designated Operations Exclusion" was the reason for the denial, but its summary judgment motion argued there was no duty to defend because of the excess coverage clause of the policy.

reasonableness of the stipulated judgment. Scottsdale appeals all rulings of the District Court, except for the ruling that it had a duty to defend Haynie.

## STANDARDS OF REVIEW

¶15 A district court's grant of summary judgment is reviewed de novo, applying the same criteria as the district court. *State Farm Fire & Cas. Co. v. Schwan*, 2013 MT 216, ¶ 12, 371 Mont. 192, 308 P.3d 48. Under M. R. Civ. P. 56(c), judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200 (citing *Corporate Air v. Edwards Jet Ctr.*, 2008 MT 283, ¶ 24, 345 Mont. 336, 190 P.3d 1111).

¶16 A material fact is a fact that involves the elements of the cause of action or defenses at issue to an extent that necessitates resolution of the issue by a trier of fact. *Roe*, ¶ 14 (citing *Corporate Air*, ¶ 24). The party moving for summary judgment has the initial burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Roe*, ¶ 14 (citing *Corporate Air*, ¶ 25). If the moving party meets this burden, then the burden shifts to the nonmoving party to establish that a genuine issue of material fact does exist. *Roe*, ¶ 14 (internal quotation omitted) (citing *Corporate Air*, ¶ 25).

¶17 If no material facts are in dispute, the question of whether or not an insurer breached its duty to defend is a question of law. *Schwan*, ¶ 12 (citing *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 2005 MT 50, ¶ 14, 326 Mont. 174, 108 P.3d

469).  Questions of law are reviewed for correctness.  *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 22, 372 Mont. 191, 312 P.3d 403.

## DISCUSSION

¶18    *1.  Did the District Court err by holding that Scottsdale breached its duty to defend its insured?*

¶19    Acknowledging it had a duty to defend Haynie, Scottsdale argues it did not breach the duty because, at all times during the litigation, Haynie was fully defended by counsel provided by Farm Bureau.  Scottsdale argues that this Court's holdings in *Schwan* and *Westchester Surplus Lines Insurance Co. v. Keller Transportation, Inc.*, 2016 MT 6, 382 Mont. 72, 365 P.3d 465 [hereinafter *Westchester*], established that an insured is "only entitled to one full defense," meaning that the provision of a defense by any insurer necessarily satisfies the duty to defend of any co-insurer.  Thus, Scottsdale argues that because Farm Bureau fully defended Haynie throughout the litigation, Haynie was never "improperly abandoned by its insure[r] and left without a defense," and Scottsdale did not breach its duty to defend.

¶20    "The duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage."  *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 21, 321 Mont. 99, 90 P.3d 381; *accord Schwan*, ¶ 15; *Freyer*, ¶ 26; *Tidyman's Mgmt. Servs. v. Davis*, 2014 MT 205, ¶ 22, 376 Mont. 80, 330 P.3d 1139 [hereinafter *Tidyman's I*].  "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend."  *Staples*, ¶ 22; *Revelation Indus. v. St. Paul Fire & Marine*, 2009

10

MT 123, ¶ 32, 350 Mont. 184, 206 P.3d 919. An insurer must defend all counts "so long as one count potentially triggers coverage, even if the remaining counts would not be covered." *Schwan*, ¶ 16. An insurer's duty to defend is "independent from and broader than its duty to indemnify." *Schwan*, ¶ 15; *accord Freyer*, ¶ 26.

¶21 "[W]here an insurer refuses to defend a claim and does so unjustifiably, that insurer becomes liable for defense costs and judgments." *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶ 30, 370 Mont. 133, 301 P.3d 348 (quoting *Staples*, ¶ 27); *accord* § 28-11-316, MCA; *Tidyman's I*, ¶ 23; *Westchester*, ¶ 30; *Lee v. USAA Cas. Ins. Co.*, 2004 MT 54, ¶ 19, 320 Mont. 174, 86 P.3d 562; *Indep. Milk & Cream Co. v. Aetna Life Ins. Co.*, 68 Mont. 152, 157, 216 P. 1109, 1110 (1923) ("The refusal of the insurer to defend the action was unjustified and it did so at its peril. It constituted a breach of the contract and the respondent clearly was entitled to recover such damages as were the natural and ordinary consequence of the breach."). "[W]hen an insurer improperly abandons its insured, the insured is justified in taking steps to limit his or her personal liability." *Freyer*, ¶ 34 (quoting *Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 433 (Colo. 2008)); *accord Westchester*, ¶ 33; *Tidyman's I*, ¶ 25. "In other words, where an insurer refuses to defend its insured, it does so at its peril." *Tidyman's I*, ¶ 24; *accord Indep. Milk & Cream Co.*, 68 Mont. at 157, 216 P. at 1110.

¶22 If an insurer believes a policy exclusion applies, the prudent course of action is to defend under a reservation of rights and file a declaratory action to resolve the coverage question. *Freyer*, ¶ 37 ("[W]e have repeatedly admonished insurers to [defend the insured and file a declaratory action to discern coverage] if there is a coverage

11

question."); *Staples*, ¶ 28; *Diacon ex rel. Palmer v. Farmers Ins. Exch.*, 261 Mont. 91, 102, 861 P.2d 895, 902 (1993); *St. Paul Fire & Marine Ins. Co. v. Cumiskey*, 204 Mont. 350, 358, 665 P.2d 223, 227 (1983) ("In a proper case, an insurer may use [a declaratory action] in order to obtain a determination of the validity, continuance, or coverage of an insurance policy; a determination of the extent of liability; or a determination of the insurer's duties under the policy."); *see also Nielsen v. TIG Ins. Co.*, 442 F. Supp. 2d 972, 977 (D. Mont. 2006) (noting this Court's admonition to use declaratory actions to resolve coverage questions).

¶23    In *Schwan*, on which Scottsdale relies, we held the insurer did not breach its duty to defend, despite not hiring counsel for its insureds, because its actions in coordinating with the insureds' other defense counsel "gave the necessary substance to the duty to defend and fulfilled its contractual duty to the [insureds] under the policy." *Schwan*, ¶ 20. The *Schwan* plaintiffs argued and the district court ruled that the insurer, State Farm Fire and Casualty Company (State Farm Fire), breached its duty to defend the defendants by not "retain[ing] separate counsel for the [defendants] in the [underlying tort action] or contribut[ing] financially to payment of [the other insurer's retained counsel's] legal fees." *Schwan*, ¶ 11. However, State Farm Fire engaged in discussions with the insureds' co-insurer, confirmed the co-insurer did not need assistance and was defending the insureds on all claims, committed to assuming the defense if the co-insurer discontinued its defense, participated in settlement discussions, and kept the insured advised of its actions. *Schwan*, ¶ 19. State Farm Fire also filed a declaratory action to determine coverage and hired coverage counsel for the insureds, even though not

required to do so under the policy. *Schwan*, ¶¶ 9, 19. We reasoned that the insureds had not been "left unprotected or . . . prejudiced" by State Farm Fire's actions, *Schwan*, ¶ 20, and the duty to defend had not been breached, *Schwan*, ¶ 25.

¶24 In *Westchester*, we held that Westchester Surplus Lines Insurance Company had not breached its duty because "[t]he facts of this case demonstrate that the insureds were not 'improperly abandoned' by their insurers and left without a defense such that they would be 'justified in taking steps to limit their personal liability' by entering a stipulated judgment." *Westchester*, ¶ 33 (quoting *Freyer*, ¶ 34). Westchester, an excess carrier, assumed defense of the insured when the primary insurer's policy limits were reached, issued a reservation of rights letter explaining it would defend up to its facial policy limits of $4 million, litigated the matter until the facial limits were exhausted, transferred the case back to the primary insurer, who assumed the defense, and joined the primary insurer in a declaratory action to determine coverage when plaintiffs claimed there was additional coverage. *Westchester*, ¶¶ 4–8. Between Westchester and the primary insurer, the insureds' legal costs, though delayed, were completely paid and the insured had legal representation up to the entry of the stipulated judgment between the insured and plaintiffs. *Westchester*, ¶ 31.

¶25 In arguing it did not breach the duty to defend, Scottsdale urges a laser-like focus on the fact that Haynie was represented by counsel, overlooking our holding in *Schwan* that legal representation of the insureds by a co-insurer "[did] not mean that State Farm Fire's duty to defend the [insureds] was extinguished by the defense provided by [the co-insurer]." *Schwan*, ¶ 17. Rather, we reviewed all of the facts in the matter to

determine "whether State Farm Fire fulfilled [its] duty [to defend] by the actions it took," *Schwan*, ¶ 14, and ultimately determined that it provided the "necessary substance" of its contractual duty, *Schwan*, ¶ 20. Similarly, in *Westchester*, we concluded that "[t]he facts of this case demonstrate that the insureds were not 'improperly abandoned' by their insurers." *Westchester*, ¶ 33 (quoting *Freyer*, ¶ 34). The same conclusion cannot be reached from a review of Scottsdale's actions here.

¶26 After receiving notice of the claim, Scottsdale spoke with Kyle Haynie on March 21, 2013, learning that Farm Bureau had assigned a claim number to the matter and filed an Answer on behalf of Haynie, and again on March 25, 2013, when it learned that the construction contract had been signed before the inception of its policy period and that Farm Bureau was undertaking defense of Haynie. Doing nothing more, on May 20, 2013, Scottsdale denied coverage pursuant to the "Designated Operations Exclusion" of its policy, and did nothing further until it was named as a defendant in this action following entry of the stipulated judgment.

¶27 Clearly, the factual assertions of Moodie's claim included alleged actions by Haynie within Scottsdale's policy period: the policy became effective on April 29, 2009, and construction was not completed by Haynie until September 2009. Yet, contrary to what we have "repeatedly admonished insurers," *Freyer*, ¶ 37, Scottsdale did not seek a declaratory ruling to confirm its internal coverage determination. A declaratory action could have been brought early in the litigation—either upon tendering a defense to Haynie upon reservation of rights, or while letting Farm Bureau take the lead in defending Haynie—to resolve the coverage issue and confirm whether Scottsdale had a

14

duty to defend. Failing that, Scottsdale provided no other assistance whatsoever to its insured related to the defense. As the District Court found, "Scottsdale can point to no evidence of actions it took to assist or participate in its insured's defense." Unlike the insurers in *Schwan* and *Westchester*, Scottsdale made no effort to contact the co-insurer to further understand the claims, offered no coordination, and provided no other defense support pending a ruling that would affirmatively confirm whether coverage existed under the policy. It simply made the unilateral decision that it was done.

¶28 An insurer must ensure an insured is defended, as the insurer in *Schwan* did, even as it disputed coverage. Scottsdale did nothing to honor the contractual benefit that Haynie had secured under the policy, or to confirm that it had no obligation to do so. When an insurer defends the insured, it also defends itself against a duty to defend claim. Scottsdale's decision to "roll the dice" on its opinion that Haynie was not insured under the policy exposed Haynie, and itself, to great risk.

¶29 Scottsdale's failures placed Haynie in the position of litigating under a reservation of rights letter from Farm Bureau. Farm Bureau provided a defense, but did so under a reservation of rights that informed Haynie that "some or all of the damages" alleged may be excluded under the policy, and that the litigation "presents the potential for personal liability on your part." Farm Bureau reserved its right to "deny coverage to you, and anyone claiming coverage under your policy, for any judgment falling outside the policy's coverage." Scottsdale knew Haynie was being defended by Farm Bureau, but made no effort to learn if Haynie was being defended under a reservation of rights and, if so, the terms of the reservation. Haynie was "left unprotected," *Schwan*, ¶ 20, and faced

15

with this scenario, entered the stipulated judgment, stating that "I [Kyle Haynie] settled with Moodie to eliminate the severe risks to me and my business." "[W]hen an insurer improperly abandons its insured, the insured is justified in taking steps to limit his or her personal liability." *Freyer*, ¶ 34 (quoting *Old Republic Ins. Co.*, 180 P.3d at 433); *accord Westchester*, ¶ 33; *Tidyman's I*, ¶ 25. As such, the stipulated judgment was the "natural and ordinary consequence of [Scottsdale's] breach" of its duty to defend Haynie. *Indep. Milk & Cream Co.*, 68 Mont. at 157, 216 P. at 1110.[5]

¶30 Scottsdale disclaimed coverage without a declaratory judgment and took no further steps to honor its duty to defend, which resulted in an abandonment of its insureds that exposed them to risk. While Scottsdale now acknowledges it had a duty to defend Haynie, at the time it entered the stipulated settlement, Haynie had received only denials from Scottsdale. We affirm the District Court's holding that Scottsdale breached its duty to defend Haynie.

¶31 *2. Did the District Court err by ruling there were no grounds for a reasonableness hearing regarding the stipulated judgment?*

---

[5] Notably, the situation here is also different from that in *Freyer*. In *Freyer*, the insured entered a consent judgment, but the insurer provided a defense for the insured. *Freyer*, ¶¶ 14, 17. We held:

> When an insurer defends the insured against a claim, and challenges coverage in a separate declaratory action, a stipulated settlement that relieves the insured of any financial stake in the outcome of the case does not represent the damages "within the contemplation of the parties when they entered into the insurance contract, and such as might naturally be expected to result from its violation."

*Freyer*, ¶ 36 (quoting *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 64, 341 Mont. 33, 174 P.3d 948). Here, Haynie was being defended under a substantial reservation of rights by a *co-insurer*, and Scottsdale did nothing to confirm its coverage decision, exposing Haynie to significant risk.

¶32 Montana's general damages statute requires that "[d]amages must in all cases be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages contrary to substantial justice, no more than reasonable damages can be recovered." Section 27-1-302, MCA. Likewise, settlements where an insurer has breached its duty to defend "must be reasonable." *Abbey/Land LLC v. Interstate Mech. Inc.*, 2015 MT 77, ¶ 12, 378 Mont. 372, 345 P.3d 1032 (citing *Tidyman's I*, ¶ 40; § 27-1-302, MCA; *Watson v. West*, 2011 MT 57, ¶ 11, 360 Mont. 9, 250 P.3d 845); *accord Indep. Milk & Cream Co.*, 68 Mont. at 157, 216 P. at 1110.

¶33 When challenging the reasonableness of the stipulated settlement, the insurer bears the initial burden. *Tidyman's I*, ¶ 41. Where a plaintiff has moved for approval of a stipulated settlement, the insurer "must set forth specific facts tending to demonstrate that the settlement amount may be unreasonable and request the district court to hold a reasonableness hearing." *Tidyman's I*, ¶ 41. The insurer must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designate specific facts* showing that there is a genuine issue for trial." *Tidyman's I*, ¶ 41 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986)) (emphasis added). If the insurer sets forth sufficient facts to make a showing that the settlement is unreasonable, that constitutes "a factual issue which precludes entry of summary judgment upon a claim for payment of a settlement amount, and a hearing on reasonableness should be held." *Tidymans I*, ¶ 41.

¶34 Scottsdale raised specific fact issues by outlining problems with the appraisal used to establish the settlement amount. Even without the benefit of discovery, Scottsdale introduced an affidavit based upon tax records evidencing the tax value of the land and building currently owned by Moodie. This information implicated potential problems with Moodies's expert's filings regarding damages and the reasonableness of the stipulated judgment. Specifically, Scottsdale identified a possible $2 million windfall that appears to grant Moodie sufficient damages to purchase new land and build a new building, without considering the value of the land and building constructed for and currently owned by Moodie as offsetting values. This constitutes sufficient "specific facts" to preclude the entry of summary judgment and require a reasonableness hearing.[6]

¶35 We hereby reverse the District Court and remand back for a reasonableness hearing to determine whether the settlement was reasonable in accordance with our holding in *Tidyman's Management Services Inc. v. National Union Fire Insurance Co.*, 2016 MT 201, 384 Mont. 335, 378 P.3d 1182 [hereinafter *Tidyman's II*].

¶36 *3. Did the District Court err by ruling that Scottsdale was not entitled to discovery regarding the reasonableness determination?*

¶37 We also remand this matter for appropriate discovery in accordance with *Tidyman's II*. "[T]he District Court retains discretion to determine what evidence to admit or refuse in a reasonableness hearing." *Tidyman's II*, ¶ 16. However, the District Court cannot refuse to hear "material and relevant evidence." *Tidyman's II*, ¶ 16.

---

[6] Scottsdale also raises several other factual issues with the stipulated judgment, but one material factual issue is sufficient to preclude entry of summary judgment of a stipulated settlement and require a reasonableness hearing.

Material and relevant evidence is that which is "relevant to an assessment of the reasonableness of the stipulated settlement," *Tidyman's II*, ¶ 16, including "facts bearing on the liability and damage aspects of [the] plaintiff's claim, as well as the risks of going to trial" for a defendant who "does not have the benefit of insurance coverage." *Tidyman's II*, ¶ 15.

¶38 Discovery must be sufficient to allow the District Court to fulfill its duty to "objectively consider both the merits of the underlying case and the value to a prudent uninsured defendant of confessing judgment in exchange for a covenant not to execute." *Tidyman's II*, ¶ 15. However, it is not an excuse for the insurer to raise "insurance contract defenses" or to "assert its policy limits," as it has already forfeited those rights by breaching its duty to defend. *Tidyman's II*, ¶ 14.

¶39 For the foregoing reasons, we affirm the District Court's determination that Scottsdale breached its duty to defend, and remand this matter for discovery and a reasonableness hearing.

¶40 Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.

/S/ JIM RICE

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT