J-A09033-18

2018 PA Super 215

PREFERRED CONTRACTORS
INSURANCE COMPANY, RRG, LLC

  Appellant

   v.

MICHAEL SHERMAN D/B/A
SHERMAN WOODCRAFT; AND KIRK
WILLIAMS; AND JNJ HOLDINGS,
LLC; AND RICHARD J. FRISCHOLZ,
JR., ADMINISTRATOR OF THE
ESTATE OF BRETT FRISCHOLZ,
DECEASED, AS RECIPIENT OF AN
ASSIGNMENT FOR THE RIGHTS OF
MICHAEL SHERMAN D/B/A
SHERMAN WOODCRAFT, AND IN
HIS OWN RIGHT AND PREFERRED
CONTRACTORS INSURANCE
COMPANY, RRG, LLC
   v.

JOHN M. BROWN INSURANCE
AGENCY, INC.

: IN THE SUPERIOR COURT OF
:   PENNSYLVANIA
:
:
:
:
:
:
:
:
: No. 1260 WDA 2017
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Appeal from the Judgment Entered August 17, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD. No. 12-020228

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

OPINION BY MURRAY, J.:       **FILED JULY 24, 2018**

Preferred Contractors Insurance Company, RRG, LLC (PCIC) appeals

from the order denying its motion for summary judgment and granting the

motions for summary judgment of defendants Michael Sherman d/b/a

Sherman Woodcraft (Sherman), Kirk Williams (Williams), JNJ Holdings, LLC

(JNJ), Richard J. Frischolz, Jr., Administrator of the Estate of Brett Frischolz, and the John M. Brown Insurance Agency, Inc. (Brown Agency). After careful consideration, we affirm in part and vacate in part, and remand for further proceedings consistent with this decision.

We summarize the relevant facts and procedural history of this case as follows. Sherman is a general contractor who engages in home renovation. On occasion, Sherman's contracting business has involved renovating residential roofs. In early 2011, Sherman orally agreed to work with Williams on renovating a residential property located at 94 Estella Avenue in the Mount Washington neighborhood of the City of Pittsburgh (Estella Avenue Project).

In preparation for this project, Sherman, originally from California, obtained his Pennsylvania Contractor License and enlisted the help of his wife, Kylee Sherman (Kylee), to help him procure a general liability insurance policy. In April 2011, Kylee filled out an online form with the Brown Agency, an Illinois insurance broker, seeking a quote for a general liability insurance policy. On May 20, 2011, Arturo Coronel (Coronel), a representative of the Brown Agency, contacted Kylee to discuss potential insurance policies. Based on this conversation, Coronel chose PCIC to be the insurer for Sherman's general liability policy (Policy) and assisted Sherman in completing an insurance application. The same day, Coronel emailed Sherman a certificate of insurance, which confirmed the binding of coverage with PCIC. At no point prior to the binding of coverage did Sherman inform PCIC that he engaged in

roofing work. Although Sherman later allegedly completed a revised application, PCIC claimed that it never received the revised version.

Importantly, after the binding coverage and prior to the events giving rise to this lawsuit, PCIC never sent a copy of the Policy directly to Sherman. Instead, PCIC uploaded the Policy to a shared electronic database to which the Brown Agency had access so that the agency could forward the terms of the Policy to Sherman.

After PCIC bound coverage on the Policy, Sherman signed a contract with JNJ, a company owned by Williams, to perform contracting work on the Estella Avenue Project. The contract indicated that the scope of the work for the project included roofing, electrical, plumbing, HVAC, windows, framing, drywall, external fascia, gutters, kitchen, bathrooms, painting, flooring, and decking. As the Estella Avenue Project progressed, Sherman and Williams realized that they would be unable to complete the project without subcontracting the roofing work. While attempting to secure a subcontractor to remove and replace the existing roof, Williams became concerned with the high cost of the quotes that he and Sherman had received. Consequently, Sherman and Williams agreed that Sherman would remove the existing roof and limit the subcontractor's work to constructing the new roof.

In the time leading up to the subcontractor beginning work on the roof, Sherman and Brett Frischolz (Frischolz), a college student Williams allegedly hired to assist Sherman with work on the Estella Project, began tearing out

the shingles of the existing roof.  On the morning of August 4, 2011, Sherman and Frischolz were nearing completion of their work removing the existing roof.  During the course of that morning, Sherman asked Frischolz to help him adjust the placement of plywood that the two had earlier situated against the neighboring home.  Sherman and Frischolz had erected these protective plywood panels, in part, to prevent falling roof debris from damaging the neighboring home given its close proximity to 94 Estella Avenue.  In order to move the protective panels, Sherman and Frischolz had to access a scaffold from a second-floor window that was approximately 20 feet off the ground. When Frischolz stepped on the scaffolding to move one of the protective panels, he stepped on a wood plank that Sherman had failed to anchor to the metal poles of the scaffold.  The wood plank tipped suddenly and Frischolz fell headfirst approximately 20 feet to the ground.  Frischolz sustained catastrophic brain injuries and died eight days later.

On October 18, 2011, Richard J. Frischolz, Jr., Administrator of the Estate of Brett Frischolz (the Estate), filed a wrongful death action against Sherman, Williams, and JNJ.  On November 10, 2011, PCIC issued a reservation of rights letter in which it informed Sherman that it would provide him with a defense and indemnification in the wrongful death action subject to a determination of whether it owed him coverage.  In 2012, the Estate reached a settlement agreement with Williams and JNJ.

On October 22, 2012, PCIC filed a complaint pursuant to the Declaratory Judgment Act, 42 Pa.C.S.A. § 7531, *et seq.*, in which it sought, *inter alia*, a declaration of rights under the Policy and a determination of whether it had a duty to indemnify Sherman in the wrongful death action brought against him by the Estate. PCIC alleged, *inter alia*, that it did not owe Sherman coverage in the wrongful death action because Sherman made material misrepresentations and omissions on Sherman's insurance application relating to the nature of Sherman's contracting business (*i.e.*, the application failed to inform PCIC that Sherman did roofing work). PCIC further alleged that it did not owe Sherman coverage because the Policy specifically excluded coverage for any claims of bodily injury arising out of or relating to roofing operations.[1]

---

[1] The roofing operations exclusion reads as follows:

This insurance does not apply to:

\*     \*     \*

q. Roofing Operations

Any claim for "bodily injury" or "property damage" that arises out of, results from, is caused by, contributed to, or in any way related to, in whole or in part, roofing operations performed by any insured or any contractor or subcontractor working on behalf of any insured. Roofing operations include, but are not limited to, the removal or installation of any and all materials on a roof that constitute a roof on any building, home or structure, including but not limited to shakes, shingles, tar paper, felt paper, tiles, decking, and other covering. Also excluded is any claim involving repair work by any insured on a roof, or deck that also provides a

In response, Sherman argued that he was not bound by the roofing operations exclusion because PCIC never delivered the Policy to him.

On August 25 2014, the Estate filed a "Petition to Approve Consent Judgment" in which it requested that the trial court enter judgment against Sherman and in favor of the Estate for $3.5 million. The same day, the trial court granted the petition and entered a judgment in favor of the Estate and against Sherman for $3.5 million. On August 27, 2014, Sherman assigned all of his rights under the Policy and any potential claims he had against PCIC for its failure to indemnify him to the Estate.

On February 27, 2015, PCIC filed its first amended complaint. On July 13, 2015, PCIC filed a "Second Amended Complaint and Joinder Complaint" in which it joined the Brown Agency as a third-party defendant. PCIC's second amended complaint included, *inter alia*, claims for declaratory relief, breach of contract, breach of warranty, common law and contractual indemnification, contribution, misrepresentation, and negligence. PCIC alleged that the Brown Agency was negligent for failing to ensure it received an accurate insurance application from Sherman and for failing to deliver the Policy to Sherman.

---

covering over interior rooms of a building, home or structure, including over a garage or storage area.

PCIC's Motion for Summary Judgment, 11/18/16, Exhibit 5 (The Policy, § (1)(2)(q)).

On August 11, 2015, the Brown Agency filed preliminary objections. On December 2, 2015, the trial court sustained the Brown Agency's preliminary objections, in part, based on a forum selection clause in the operating agreement between PCIC and the Brown Agency that mandated that the parties litigate any dispute arising out of their operating agreement in Los Angeles County, California. The trial court dismissed PCIC's claims against the Brown Agency for declaratory relief, breach of contract, breach of warranty, contractual indemnification, and misrepresentation. Following preliminary objections, PCIC's only remaining claims against the Brown Agency were its claims of contribution, common law indemnification, and negligence.

On November 18, 2016, upon the completion of discovery, PCIC filed a motion for summary judgment. PCIC argued that Sherman was not entitled to coverage relating to Frischolz's death based on material misrepresentations and omission in Sherman's insurance application and certain coverage exclusions. In the alternative, PCIC argued that if Sherman was entitled to coverage, then PCIC was entitled to indemnification from the Brown Agency for misrepresentations and omissions on Sherman's insurance application and for its failure to deliver the Policy to Sherman. The Estate and the Brown Agency subsequently filed cross-motions for summary judgment.

The Estate argued that PCIC never delivered the Policy to Sherman and consequently, PCIC could not rely on any of the coverage exclusions in the

Policy. PCIC asserted that it electronically delivered the Policy to the Brown Agency, and because the Brown Agency was Sherman's agent, this constituted delivery to Sherman. PCIC maintained that electronic delivery occurred in May 2011 when it uploaded the Policy to a shared electronic database to which the Brown Agency had access and sent the Brown Agency an automatically generated email notification with a link to access the Policy. Although neither PCIC nor the Brown Agency could produce a copy of the actual notification email PCIC sent the Brown Agency regarding Sherman's policy,[2] PCIC contended that it was the regular course of its dealings with the Brown Agency to electronically deliver policies by uploading them to the shared database and sending the automatically generated email.

The Estate maintained that the Brown Agency was PCIC's agent for purposes of delivery and thus, even if PCIC had delivered the Policy to the Brown Agency, it did not constitute delivery of the Policy to Sherman. Additionally, the Estate argued that Sherman's insurance application contained no misrepresentations and thus, provided no legal basis for PCIC to deny coverage.

The Brown Agency argued that it was entitled to summary judgment because it owed no common law duty of care to PCIC with respect to the insurance application and delivery of the Policy. Consequently, the Brown

_____

[2] Both PCIC and the Brown Agency have indicated that they do not have any emails saved dating back to 2011.

- 8 -

Agency asserted that PCIC could not establish cognizable claims for negligence, contribution, and common law indemnification.

On August 17, 2017, following argument by the parties, the trial court issued a memorandum and order of court in which it denied PCIC's motion for summary judgment and granted the motions for summary judgment of the Estate and the Brown Agency. The trial court concluded that PCIC could not rely on the roofing operations exclusion in the Policy to deny Sherman coverage because it had failed to deliver the Policy to him prior to the accident resulting in Frischolz's death. Trial Court Opinion, 8/17/17, at 3-5. With respect to PCIC's claim that it had no obligation to provide Sherman coverage based on misrepresentations and omissions in his insurance application, the trial court concluded that although Sherman's insurance application was "arguably[] incomplete[,]" he had satisfied his obligation to correct his application by contacting Coronel at the Brown Agency to inform him of the pertinent missing information. *Id.* at 7-9. The trial court further determined that PCIC could not establish that the Brown Agency owed it a duty of care and dismissed its remaining claims against the agency. *Id.* at 11-12.

On September 1, 2017, PCIC timely appealed to this Court. On September 8, 2017, the trial court ordered PCIC to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure within 30 days of the date of the order. On October 5, 2017, PCIC timely filed its Rule 1925(b) statement.

On appeal, PCIC presents the following issues for review:

1) Did the court below err in failing to rule that the misrepresentations in Sherman's application for insurance and breaches of the warranties in his application, which became part of the Policy, preclude coverage or, at minimum, was a factual issue to be decided by a jury?

2) Did the court below err in concluding that PCIC did not deliver the Policy to Sherman through delivery to his agent or, at minimum, that was a factual issue to be decided by a jury?

3) Did the court below err in not allowing PCIC to rely upon its exclusions to coverage to deny any duty to indemnify?

4) Did the court below err in finding a breach of a duty to indemnify and indicating that a judgment of at least $1 million was in order?

5) By ruling in favor of Sherman, did the court below err in granting the [Brown] Agency's [m]otion and denying PCIC's Motion?

PCIC's Brief at 3-4.

Our standard of review regarding a trial court's decision to grant or deny a motion for summary judgment is as follows:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non[-]moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes

- 10 -

the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Thompson v. Ginkel***, 95 A.3d 900, 904 (Pa. Super. 2014).

Significant to the first four issues PCIC raises on appeal, each of which stem from the insurance policy at issue, is the Policy choice of law provision that states: "This Policy shall be governed and construed in accordance with the laws of the State of Montana." Brief in Support of the Estate's Motion for Summary Judgment, 11/18/16, Exhibit V (PCIC Policy Commercial General Liability Conditions, p. 18 ¶ 16 "Governing Law."). There is no dispute between PCIC and the Estate that Montana law governs the first four issues of this appeal.

In its first issue, PCIC argues that the trial court erred in failing to grant summary judgment in its favor because Sherman made material misrepresentations and omissions in his insurance application. PCIC contends that under Montana law, an insured who makes material misrepresentations or omissions in an insurance application is not entitled to coverage under the policy. Specifically, PCIC asserts that it presented evidence demonstrating that Sherman: (1) expressly acknowledged in his application that the Policy would contain a roofing operations exclusion; (2) warranted that the information he provided in the application was correct and complete and that he agreed to notify PCIC of any material changes in the application; (3)

described his contracting business as "Kitchen and Bath Remodeling for residential homes"; and (4) omitted any reference to any of his past or intended future roofing work. PCIC's Brief at 23-24. PCIC maintains that this evidence establishes misrepresentations and omissions in the insurance application material to the risk of issuing an insurance policy with a roofing operations exclusion. Thus, PCIC argues that the trial court wrongly concluded that Sherman did not make any misrepresentations or omissions in his insurance application that voided the Policy. In the alternative, PCIC contends that at the very least, this evidence demonstrates a genuine issue of material fact as to whether Sherman made material misrepresentations and omissions on his insurance application for a jury to resolve.

In response, the Estate argues that Sherman's application does not preclude coverage because Sherman was unaware at the time he applied for insurance that he would be doing roofing work on the Estella Avenue Project. Additionally, the Estate asserts that the application did not inquire as to whether Sherman intended to engage in roofing work and otherwise provided no indication that the Policy would be void if he did engage in such work. Consequently, the Estate asserts that whether Sherman intended to engage in roofing operations was not material to the risk assumed by PCIC in issuing the Policy to Sherman.

Section 33-15-403 of the Montana Code governs the statutory rescission of an insurance contract, and provides, in pertinent part, as follows:

(2) Misrepresentations, omissions, concealment of facts, and incorrect statements do not prevent a recovery under the policy or contract unless:

(a) fraudulent;

(b) material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(c) the insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Mont. Code Ann. § 33-15-403(2).

In interpreting Section 33-15-403(2), the Montana Supreme Court has explained:

The requirement that a misrepresentation on an insurance application be material either to the acceptance of the risk or to the hazard assumed by the insurer in § 33–15–403(2)(b), MCA, overlaps a great deal with the condition in § 33–15–403(2)(c), MCA, that allows an insurer to deny coverage for a misrepresentation if the insurer in good faith would not have 1) issued the policy; 2) issued the policy in as large an amount; 3) issued the policy at the same premium; or 4) provided coverage with respect to the hazard resulting in the loss.

An omission or misrepresentation may be material if, had the truth been known, the reasonable and prudent insurer would not have issued the policy or would have issued it at a higher premium. This definition of materiality incorporates the idea of subsection (2)(c), that is, that the policy would not, among other things, have been issued had the insured revealed the true state of affairs. The primary difference between the two subsections is that (2)(b) deals with an objective standard of materiality, reasonableness, while (2)(c) refers to a subjective standard, good faith.

\* \* \*

- 13 -

> The materiality of an insured's misrepresentation is determined by the extent the false answer initially influenced the insurer to assume the risk of coverage . . . . . [T]he misrepresentation in the insurance application may be material if it diminishes the insurer's opportunity to determine or estimate its risk. Thus, the materiality of a misrepresentation generally is measured at the time the insurer issues the policy[.]
>
> The question of materiality is a question of fact.

*Schneider v. Minnesota Mut. Life Ins. Co.*, 806 P.2d 1032, 1035-36 (Mont. 1991) (quotation and citations omitted).

In this case, there is no dispute that the Policy contained an exclusion precluding coverage for any claims or losses incurred in roofing operations. *See* PCIC's Motion for Summary Judgment, 11/18/16, Exhibit 5 (The Policy, § (1)(2)(q)). The record reflects that Sherman initialed the paragraph in his insurance application that indicated the Policy would contain a "roofing operations" exclusion and the paragraph stating that any false information contained in the application would result in the nullification of the policy. PCIC's Motion for Summary Judgment, 11/18/16, Exhibit 1 (Insurance Application, 5/20/11). Sherman's insurance application contains no mention that he intended to do roofing work and instead describes his contracting business as "kitchen and bath remodeling for residential homes." *Id.*

Thus, the insurance application: (1) demonstrates that Sherman was aware the policy for which he was applying would contain a roofing operations exclusion; and (2) contains no mention that he had previously conducted roofing work or that he intended to engage in roofing work in the future. *See*

*id.* Sherman's and Williams' deposition testimony, however, reveals that Sherman had done roofing work in his general contractor business in the past and that he knew doing such work was a distinct possibility, if not certainty, for the Estella Avenue Project. Brief in Support of the Estate's Motion for Summary Judgment, 11/18/16, Exhibit B (Deposition of Sherman, 9/6/13, at 15, 24, 32, 35) and Exhibit C (Deposition of Williams, 6/5/12, at 28-32).

The Estate argues that whether Sherman intended to engage in roofing operations was not material to the risk assumed by PCIC in issuing coverage and that PCIC would have issued the Policy regardless of whether Sherman had initially informed PCIC that he would possibly conduct roofing operations. The Estate points out that Sherman's insurance application did not specifically inquire as to whether the he intended to engage in roofing work. *See* PCIC's Motion for Summary Judgment, 11/18/16, Exhibit 1 (Insurance Application, 5/20/11). Additionally, the Estate relies on the deposition testimony of PCIC's underwriter, Daniel Matteoni (Matteoni). Matteoni testified that much of the work Sherman did on the Estella Avenue Project was the type of work PCIC would expect a contractor to undertake while insured by the Policy. Brief in Support of the Estate's Motion for Summary Judgment, 11/18/16, Exhibit U (Deposition of Matteoni, 6/10/16, at 49-54). Matteoni further testified that PCIC operates with the expectation that a general contractor may undertake work beyond that contained in the contractor's business description in the

insurance application and such action does not prevent PCIC from issuing coverage. *Id.*

Therefore, on the one hand, based on the existence of a roofing operations exclusion in the Policy and the insurance application's indication that the Policy would contain such an exclusion, representations as to whether Sherman intended to engage in roofing operations would tend to be material to PCIC in deciding whether to issue the Policy to Sherman. On the other hand, the Estate has presented evidence indicating that the insurance application never afforded Sherman the opportunity to inform PCIC that he had or intended to do roofing work and evidence of whether Sherman engaged in roofing work had little effect on PCIC's decision to issue the Policy.

Accordingly, we conclude that this case contains genuine issues of material fact for a jury to resolve as to whether Sherman made misrepresentations or omissions in his insurance application that materially affected PCIC's decision to issue the Policy. The Montana Supreme Court has "expressly" made clear that "questions of materiality and of good faith are both questions of fact" for a jury to determine. *Williams v. Union Fid. Life Ins. Co.*, 123 P.3d 213, 220 (Mont. 2005). We therefore vacate the trial court's grant of summary judgment in favor of the Estate with respect to the issue of whether the representations in Sherman's insurance application precluded coverage.

Next, we address PCIC's second and third issues together because they are related. PCIC argues that the trial court erred in concluding that PCIC did not deliver the Policy to Sherman. PCIC contends that the trial court further erred in determining that because of its failure to deliver the Policy, PCIC could not rely upon any of the Policy's exclusions to preclude coverage in this case. PCIC asserts that it provided evidence that it had electronically delivered the Policy to the Brown Agency, Sherman's agent, in May 2011, when it: (1) uploaded it to a shared electronic database to which the Brown Agency had access; and (2) sent the Brown Agency an automatically generated email notification with a link to access the Policy. Although neither PCIC nor the Brown Agency could produce a copy of the actual notification email PCIC sent the Brown Agency regarding Sherman's policy, PCIC maintains that it was the regular course of its dealings with the Brown Agency to electronically deliver policies by uploading them to the shared database and sending the automatically generated email. In response, the Estate argues that under Montana law, the Brown Agency was PCIC's agent for purposes of delivery, and thus, even if PCIC had delivered the Policy to the Brown Agency, it did not constitute delivery of the Policy to Sherman.

Under Montana law, "[a]n insurance broker is usually regarded as the agent of the insured." *Nautilus Ins. Co. v. First Nat. Ins., Inc.*, 837 P.2d 409, 411 (Mont. 1992). As set forth above, the Estate asserts that in Montana, while an insurance agent acts for the insured in procuring the policy, the agent

acts for the insurer in delivering the policy. Although the Montana Supreme Court has not explicitly made this declaration, their relevant decisional authority strongly suggests that to be the case. In **Nautilus**, the Montana Supreme Court stated that negligence on the part of the broker while performing the specific acts of "delivering the policy and in collecting and remitting the premiums . . . **may** result in liability" on the part of the insurance agent to the insurer. **Id.** The Court further explained that "the determination of which party a broker is acting for as to a particular matter depends on which party requested him to do the particular thing." **Id.** at 411-12. Additionally, the Montana Supreme Court has stated that "once an agency selects a particular policy from an insurer, that agency becomes the agent of that insurer." **Monroe v. Cogswell Agency**, 234 P.3d 79, 88 (Mont. 2010).

We conclude that the trial court did not err in determining that PCIC failed to deliver the Policy to Sherman prior to Frischolz's accident. First, there is no dispute that PCIC relied upon the Brown Agency to deliver the policy and to inform the insured (in this case Sherman) of the terms and exclusions of its insurance policies. **See** PCIC's Brief at 33-34. The operating agreement between PCIC and the Brown Agency expressly states that the agency "will provide each insured with an explanation of the terms and provisions of the policy of insurance including, but not limited to coverage being afforded and also exclusions contained with the policy of insurance." Second Amended Complaint and Joinder Complaint, 7/13/15, Exhibit 9 (Limited Produce

Agreement, ¶ 15).  Second, logically speaking, delivery of an insurance policy cannot occur until after the broker selects an insurance policy from the insurer.

Therefore, because PCIC requested the Brown Agency to deliver the Policy and delivery could not occur until after the Brown Agency procured the Policy, we hold that the Brown Agency was the agent of PCIC for purposes of delivery.  Furthermore, because PCIC's delivery argument is based on the erroneous assertion that the Brown Agency was Sherman's agent for purposes of delivery, PCIC cannot impute its alleged electronic delivery of the Policy to the Brown Agency onto Sherman.  Accordingly, we conclude that the trial court did not err in determining that delivery did not occur.

Nevertheless, this does not end our inquiry.  Importantly, in its third issue, PCIC contends that all that is required under Montana law for an insurer to rely on policy exclusions to deny coverage is for the insured to have notice of those exclusions.  Additionally, PCIC contends that it has, at the very least, established a genuine issue of material fact as to whether it provided sufficient notice of the roofing operations exclusion to Sherman.

We agree with PCIC's position that, under Montana law, all that is required for an insured to be subject to policy exclusions is for the insured to have notice of those exclusions.  While Montana law requires an insurer to deliver an insurance policy to the insured "within a reasonable period of time after its issuance," Mont. Code Ann. § 33-15-412(1), the Estate has cited no authority from the Montana Supreme Court that explains the consequences to

- 19 -

an insurer for failing to deliver a policy to the insured. Likewise, our research has not uncovered any Montana Supreme Court decisions that discuss the implications of an insurer's failure to deliver an insurance policy to an insured. Thus, under Montana law, there is no authority holding that an insurer cannot rely on the coverage exclusions in an insurance policy if the insurer fails to deliver the policy to insured.

We agree with PCIC that this issue is governed by the Montana Supreme Court's decision in **State v. Allendale Mutual Insurance Company**, 154 P.3d 1233 (Mont. 2007). **Allendale** places the focus of the applicability of coverage exclusions on the question of whether the insured had notice of them. In **Allendale**, the insured specifically raised the argument that "if an insurer does not timely deliver a policy to the insured, it may not rely on exclusions within the undisclosed policy." **Id.** at 1237. The Montana Supreme Court disagreed, holding that "[e]ven if a policy is not delivered to an insured, insurers may rely upon valid exclusions in their policies when the insured has notice of those exclusions." **Id.** at 1238. The Court explained:

> The exclusions in the policies in question were communicated to the [insured]. The policies the [insured] claims were not delivered were renewals of existing policies and contained identical coverage provisions and exclusions. It is undisputed that the [insured] received a renewal binder from each insurer that listed all applicable coverage forms, or otherwise expressly stated the exclusions. The [insured] cannot reasonably claim that it was unaware of the relevant terms and exclusions.

**Id.** at 1237-38.

The Estate maintains that the *Allendale* decision is inapplicable to this case. The Estate argues that *Allendale* is factually distinguishable because it involved the renewal of a previously issued insurance policy, and consequently, the insured in that case was already familiar with the terms and exclusions of the policy.

In support of its position, the Estate cites *Germain v. American International Group., Inc.*, 2008 WL 11347705 (D. Mont. Sept. 8, 2008), for the proposition that delivery is necessary for an insurer to deny coverage based on policy exclusions. In *Germain*, the insured argued that its insurer was estopped from relying on a coverage exclusion in his insurance policy to deny coverage because the insurer had failed to deliver the policy to him prior to his injury.

The United States District Court for the District of Montana explained:

> [M]any states, including Montana, have enacted statutes requiring that insurers deliver a copy of an insurance policy to the insured "within a reasonable time after its issuance." Mont. Code Ann. § 33–15–412(1). In such states, many courts have held that where an insurer fails to comply with its statutory duty to deliver a copy of the policy, and that "failure to comply has prejudiced the insured, the insurer may be estopped from asserting an otherwise valid coverage exclusion."

*Id.* at *6 (quoting *Brown Mach. Works & Supply, Inc. v. Ins. Co. of N. Am.*, 951 F. Supp. 988, 994 (M.D. Ala. 1996)). The court further explained that an insured is "typically" prejudiced "in cases where the insurer fails to provide the insured with a copy of the policy before the insured suffers a loss,

and the insurer then attempts to deny coverage based on a ***previously undisclosed exclusion*.**  ***Id.*** at *7 (emphasis added).

The court in ***Germain*** acknowledged, however, that an insured could receive notice of coverage exclusions by means other than delivery of the policy.  ***Id.*** at *7-*8.  Ultimately, the court concluded that the record was insufficient to make a finding as to whether the insurer in that case timely disclosed the applicable exclusion to the insured, and declined to grant summary judgment on the issue of coverage.  ***Id.***

Thus, even under the authority relied upon by the Estate, to obtain summary judgment when arguing that an insurer cannot rely on coverage exclusions in an insurance policy that the insurer did not deliver, the insured must establish more than the insurer's failure to deliver the policy.  ***See id.*** Pursuant to ***Germain***, the insured must establish, in addition to the insurer's failure to deliver the policy, that the insurer never otherwise timely disclosed the relevant coverage exclusions to the insured by means other than delivery of the policy.  ***See id.***

Consonant with the foregoing, we conclude that the trial court erred in deciding that PCIC was unable to rely on any of the exclusions in the Policy based on its determination that PCIC failed to deliver the Policy to Sherman. We agree with PCIC's contention that ***Allendale*** is compelling and controlling in this case.  While ***Allendale*** is factually distinguishable from this case, there is no language in the decision expressly limiting the holding (*i.e.*, "Even if a

policy is not delivered to an insured, insurers may rely upon valid exclusions in their policies when the insured has notice of those exclusions.") to the facts of this case. Additionally, while delivery of an insurance policy would clearly put the insured on notice of coverage exclusions contained in the Policy, both *Allendale* and *Germain* make clear that exclusions may be applicable in situations where the insurer provides notice of them to the insured by means other than delivery of the policy. Moreover, we reiterate that Montana law on this issue is sparse. In sum, we decline to conclude that delivery of the policy is required for an insurer to rely on the exclusions in the policy.

PCIC further argues that the record demonstrates Sherman had adequate notice of the roofing operations exclusion contained in the Policy because he initialed the paragraph in his insurance application that indicated the Policy would contain a "roofing operations" exclusion. *See* PCIC's Motion for Summary Judgment, 11/18/16, Exhibit 1 (Insurance Application, 5/20/11). Conversely, the Estate asserts that even though Sherman initialed that paragraph, it only provided him with notice that the Policy would contain exclusions that it would later explain and define. The Estate contends that because Sherman never had knowledge of the precise terms of the roofing operations exclusion prior to Frischolz's accident, PCIC cannot rely on the exclusion to preclude coverage.

Again, we conclude that the question of whether Sherman had notice of the roofing operations exclusion in the Policy presents a genuine issue of

material fact to be resolved by a jury. Accordingly, we vacate the trial court's order to the extent that it grants summary judgment in favor of the Estate on the issue of coverage, based on its determination that PCIC failed to deliver the Policy to either the Brown Agency or Sherman, as delivery of the policy is not the full inquiry. Thus, to the extent the trial court determined on summary judgment that PCIC could not rely on exclusions in the Policy based on its conclusion that PCIC failed to deliver the Policy, we vacate the trial court's order in that respect. We remand this matter for a determination of whether: (1) Sherman had sufficient notice of the relevant policy exclusions; and if so, (2) factual findings as to whether those exclusions were applicable in this case to deny coverage.

In its fourth issue, PCIC argues that the trial court erred in concluding that it breached its duty to indemnify Sherman. PCIC contends that pursuant to applicable Montana law, it did not violate its duty to indemnify Sherman because it afforded him a defense in the underlying wrongful death action brought by the Estate while it contested coverage through the instant declaratory judgment action.

With respect to an insurer's duty to defend and indemnify, the Montana Supreme Court has explained:

> The duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage. Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend.

\*     \*     \*

> [W]here an insurer refuses to defend a claim and does so unjustifiably, that insurer becomes liable for defense costs and judgments. [W]hen an insurer improperly abandons its insured, the insured is justified in taking steps to limit his or her personal liability. In other words, where an insurer refuses to defend its insured, it does so at its peril.
>
> ***If an insurer believes a policy exclusion applies, the prudent course of action is to defend under a reservation of rights and file a declaratory action to resolve the coverage question.***

***J & C Moodie Properties, LLC v. Deck***, 384 P.3d 466, 472 (Mont. 2016).

This is exactly what transpired in this case. There is no dispute that PCIC defended Sherman in the Estate's wrongful death action. PCIC, believing one or more policy exclusions applies to preclude coverage, afforded its defense under a reservation of rights, and filed a declaratory judgment action to resolve the question of coverage. ***See id.*** This is what Montana law demands. Moreover, as we have discussed, the issue of coverage remains unclear. Accordingly, we conclude that the trial court erred in granting summary judgment in favor of Sherman and the Estate on the issue of whether PCIC breached its duty to indemnify.

Finally, PCIC argues that the trial court erred in denying its motion for summary judgment with respect to its negligence and common law indemnification claims against the Brown Agency. Specifically, PCIC contends that the Brown Agency had a duty to provide it with an accurate insurance application from Sherman and to the extent Sherman completed a corrected

application, the agency had a duty to ensure PCIC received the updated application. Additionally, PCIC asserts that the Brown Agency had a duty to deliver the Policy to Sherman.

With respect to this issue, both PCIC and the Brown Agency agree that Pennsylvania law is controlling. The Brown Agency asserts that the economic loss doctrine bars PCIC's negligence claim. "The Economic Loss Doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." **Donaldson v. Davidson Bros.**, 144 A.3d 93, 101 (Pa. Super. 2016), **appeal denied**, 169 A.3d 11 (Pa. 2017). "Purely [economic] loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery even if a direct result of the negligent act." **Id.** (quotations and citations omitted).

We agree.[3] In this case, PCIC argues that the Brown Agency is required to indemnify it for any amount it is required to pay the Estate for its judgment against Sherman. PCIC makes this claim based on its assertion that the Brown Agency was negligent in its handling of Sherman's insurance application and in failing to deliver the Policy to Sherman, which PCIC alleges directly resulted

_____

[3] We note that "[w]e are not bound by the rationale of the trial court and may affirm on any basis." **Sw. Energy Prod. Co. v. Forest Res., LLC**, 83 A.3d 177, 184 (Pa. Super. 2013) (quotations and citations omitted).

in harm to PCIC.[4]  Thus, PCIC has asserted a claim for negligence in which it alleges "purely economic loss."[5]  *See Donaldson*, 144 A.3d at 101. Accordingly, we affirm the trial court's dismissal of PCIC's negligence claim against the Brown Agency.  Because we affirm the trial court's dismissal of PCIC's negligence claim against the Brown Agency, PCIC has no basis upon which to support a common law indemnity claim.  Therefore, we conclude that the trial court did not err in granting summary judgment in favor of the Brown Agency on PCIC's claims of common law negligence and indemnification, and dismissing all claims against the Brown Agency.[6]

In conclusion, we vacate the trial court's order to the extent it determined that Sherman did not make any material misrepresentations and omissions in his insurance application to void the Policy.  Although we affirm

_____

[4]  To the extent PCIC asserts that the Brown Agency's actions with respect to Sherman's insurance application were false and misleading, the claim PCIC raised in its complaint was only that of negligence.  PCIC did not raise a claim of fraud in its complaint against the Brown Agency.

[5]  Our Supreme Court held that "the economic loss rule does not apply to claims of negligent misrepresentation brought under Section 552" of the Restatement (Second) of Torts.  *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005).  Although it appears PCIC attempted to raise a claim for negligent misrepresentation in its second amended complaint under "COUNT VII – MISREPRESENTATION," *see* Second Amended Complaint and Joinder Complaint, 7/13/15, at 44-47, the trial court entered an order on December 2, 2015 dismissing that claim, which PCIC did not appeal.  *See supra*, p. 7.

[6]  We note that PCIC does not challenge the trial court's dismissal of the Brown Agency's contribution claim.

the trial court's determination that PCIC failed to deliver the Policy to Sherman, we further vacate the trial court's order to the extent it concluded that PCIC's failure to deliver the Policy precluded PCIC from relying on the Policy's exclusions to deny coverage. We also vacate the trial court's determination that PCIC breached its duty to indemnify. We affirm the trial court's dismissal of all remaining claims against the Brown Agency. Consequently, we remand this matter to the trial court – for trial – to determine first whether Sherman made any material misrepresentations or omissions in his insurance application that preclude coverage. If the jury determines that Sherman has not made any such material misrepresentations or omissions, it must then determine whether PCIC provided Sherman with sufficient notice of the Policy's exclusions to warrant their application to preclude coverage. Finally, the jury shall determine whether any Policy exclusions are factually applicable to this case.

Order affirmed in part vacated in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Dubow joins the opinion.

Judge Bowes concurs in the result.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

- 28 -

Date:  7/24/2018