Justice Ingrid Gustafson delivered the Opinion of the Court.
***220 ¶ 1 Valentine E. Weisz (Valentine) appeals from orders of the Fourth Judicial District Court, Missoula County, granting summary judgment in favor of D.A. Davidson Trust Company (Davidson), denying Valentine's motion for partial summary judgment, and ordering sanctions, including attorneys' fees, against Valentine's legal counsel Henning, Keedy & Lee. We affirm the orders granting summary judgment in favor of Davidson and denying Valentine's motion for partial summary *928 judgment, and reverse the sanctions order. ***221 ¶ 2 We restate the issues on appeal as follows:
1. Did the District Court err when it determined Davidson properly assumed the role of Successor Trustee and granted summary judgment in its favor?
2. Did the District Court err when it denied Valentine's motion for partial summary judgment?
3. Did the District Court abuse its discretion when it ordered sanctions against Henning, Keedy & Lee?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 On September 22, 2006, Valentine created the Valentine E. Weisz Living Trust (Trust) and named herself as Trustee. On June 9, 2010, she amended the Trust (First Amended Trust) and named Davidson as Successor Trustee.
¶ 4 In late 2011, Valentine and her husband moved in with their grandson, David Weisz (David), and his wife, Lori A. Weisz (Lori), in Missoula County. After Valentine's husband died in October 2012, she continued to reside with David and Lori.
¶ 5 On December 11, 2012, Valentine's daughter Janice Burd (Janice) faxed letters to the law firm that Valentine had used for estate planning. Janice asked the firm to give the letters to Valentine in private and specifically requested the letters not be shared with Lori. In the letters, Janice expressed dissatisfaction with the division of Valentine's husband's estate. She complained that David's inheritance far exceeded her own, and pleaded, "I hope that you use your Trust to make the inheritance to the family more equal." She asked Valentine to include certain family members as Trust beneficiaries, including Janice's son Don Fairchild (Don), who had inherited significantly less from his grandfather's estate than grandson David had.
¶ 6 On January 23, 2013, having had the opportunity to read and consider Janice's letters, Valentine executed a Durable Power of Attorney that appointed Lori as her attorney-in-fact. That same day, Valentine amended the Trust (Second Amended Trust), and again named Davidson as Successor Trustee in the event of Valentine's resignation as Trustee, incapacity, or death. The Second Amended Trust provided for distributions upon Valentine's death to include: 24% of the residuary estate to Janice, 25% of the residuary estate to David, 25% of the residuary estate to Lori, and 2% of the residuary estate to Don.
¶ 7 The Second Amended Trust contains a provision that sets forth criteria for determining Valentine's capacity:
I shall be considered incapacitated if I am unable to manage my ***222 property and affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, or other causes. The determination of incapacity shall be made by a court of competent jurisdiction or by the Trustee, if the determination is confirmed in writing by a physician licensed to practice in the state of my domicile who has examined me 30 days before or after the determination. After the determination, or the confirmation, if later, my directions and any attempt by me to exercise any reserved right shall be ineffective until in like manner it is determined that I am no longer incapacitated.
¶ 8 On April 7, 2015, Valentine amended the Second Amended Trust (First Amendment). The First Amendment only modified testamentary distributions. These distributions included real property in Arizona to Janice plus 24% of the residuary estate minus $103,000 to account for the value of the Arizona property, 25% of the residuary estate to David, 25% of the residuary estate to Lori, and 2% of the residuary estate to Don. The same attorney, Kelly O'Brien, drafted the First Amended Trust, Second Amended Trust, and the First Amendment.
¶ 9 On December 29, 2015, Valentine saw her treating physician, Jeffrey C. Knight, M.D. Dr. Knight noted this examination was a "followup [sic] of family concerns regarding memory, confusion. [H]er recall of family events is good. [S]he drifts off or forgets what she is saying." After examination, Dr. *929 Knight found Valentine's "[f]unctional status has changed." Although he found her "oriented to situation," he assessed her as having an altered mental status with decreased attention.
¶ 10 In February 2016, Janice visited Valentine in Montana. Valentine then returned to California with Janice. Soon afterward, Lori contacted Davidson and advised it she believed Valentine was unable to make her own financial decisions.
¶ 11 On March 9, 2016, Dr. Knight issued a "Doctor Certification" in which he opined that, as of his last examination of Valentine, she "lack[ed] the requisite competence to manage her own financial affairs." Dr. Knight then wrote a letter to Davidson, in which he opined Valentine was not able to independently manage her financial affairs. After receiving Dr. Knight's letter, Davidson concluded Valentine was incapacitated. It assumed the role of Successor Trustee.
¶ 12 Valentine remained in California and in the spring and summer of 2016, Janice requested several payments from the Trust. Davidson approved most of the requests, but denied a few, including requests for funds to bring an unlicensed caretaker from overseas to care for Valentine, and $100,000 to build an addition onto Janice's home.
***223 ¶ 13 In August 2016, attorney Lee Henning of the law firm Henning, Keedy & Lee informed Davidson his firm was now representing Valentine. Henning supplied Davidson with a letter from Arthur Helfat, M.D., which stated Dr. Helfat had given Valentine a cognitive impairment test which demonstrated she was able to make her own medical and financial decisions. Henning further supplied Davidson with a copy of a Montana Statutory Power of Attorney, which Valentine had signed in California, that appointed Janice as her attorney-in-fact.
¶ 14 Valentine visited Montana during the end of August and beginning of September 2016. While in Montana, Valentine, accompanied by an attorney from Henning, Keedy & Lee, met with O'Brien. O'Brien and Valentine discussed changes Valentine wished to make to the Trust. O'Brien began composing a draft amendment that she intended to review with Valentine. However, a few days later, an attorney from Henning, Keedy & Lee informed O'Brien their firm had drafted revisions to the Trust and Valentine had executed a new amendment (Second Amendment).
¶ 15 After Valentine returned to California, Henning, Keedy & Lee provided Davidson with a copy of the Second Amendment that Henning, Keedy & Lee had drafted. It substantially changed the rights and interests of the beneficiaries from the First Amendment. It directed that, upon Valentine's death, the real property in Arizona would be given to Janice, and any real property in Montana would be given to David. It gave Janice and David certain personal items. It also contained numerous, significant handwritten changes to the testamentary dispositions; it indicated David and Don would receive $50,000 each, but the "50" was crossed out and "100" was handwritten in and initialed "VW." It indicated Janice would receive the entire residuary estate, but if she preceded Valentine in death, Don would receive 50% of the residue and David's issue would receive 50%.
¶ 16 Valentine also accused Davidson of "inappropriately seiz[ing] control" of the Trust. She asked Davidson to return all Trustee fees and attorney fees to the Trust.
¶ 17 On October 7, 2016, Davidson filed a Petition for Judicial Instruction and Approval of Trustee's and Attorney's Fees (Petition) in the District Court. In the Petition, Davidson alleged it owed fiduciary duties to Valentine, as Trustor, and to the Trust's other beneficiaries. Noting it had concerns of undue influence, it asked the court for guidance regarding Valentine's capacity to make financial decisions. It further asked the court to confirm Davidson's status as Successor Trustee and to approve payment of its Trustee fees and reimbursement ***224 of attorney fees.
¶ 18 Valentine, via Henning, Keedy & Lee, responded and cross-petitioned, asking the District Court to remove Davidson as Trustee and to appoint another trust company as Trustee. She asked the District Court to order Davidson to reimburse the Trust for any fees it had taken.
*930 ¶ 19 Valentine then moved for partial summary judgment. Valentine alleged: she had retained the law firm of Henning, Keedy & Lee to represent her; Davidson did not act in accordance with the procedure set forth in the Second Amended Trust when it took control of the Trust because she was allegedly incapacitated; and she had no confidence in Davidson but did not wish to act as Trustee, and thus the District Court should select a neutral third-party trustee in California to act as Trustee.
¶ 20 By this point in the litigation, various discovery disputes had arisen and the District Court appointed a Special Master to resolve them. The court ordered Valentine, Davidson, and David and Lori to each pay one-third of the cost of the Special Master.
¶ 21 Davidson and David and Lori argued the District Court needed to resolve the question of Valentine's capacity prior to ruling on the partial summary judgment motion. To resolve the dispute over Valentine's capacity and the conflicting medical opinions, the Special Master ordered Valentine to undergo examination with a doctor in California, selected by Davidson, located within 50 miles of her home. The Special Master set conditions on the evaluation, including that Janice could not contact the evaluating doctor, transport Valentine to the evaluation, or attend the evaluation. However, Davidson proposed instead to have a doctor from approximately 100 miles away rent a temporary office near Valentine to evaluate her. Valentine objected. The Special Master found no good cause for Davidson's proposal and ordered each party to propose a qualified doctor whose regular practice was no more than 50 miles from Valentine's home. After each party submitted their proposed evaluator, the Special Master selected Davidson's choice, Stephanie Moore, PsyD, FACPN.
¶ 22 While the parties were arguing over the selection of an evaluator, Henning, Keedy & Lee demanded Davidson, as Trustee, pay the attorney fees Henning, Keedy & Lee had thus far accrued in representing Valentine. Davidson refused, alleging payment was inappropriate until the District Court determined whether Valentine had had the capacity to retain Henning, Keedy & Lee. Henning, Keedy & Lee then filed a motion to compel payment. The District Court denied the motion, ruling the firm had provided no authority for their ***225 fees to be paid at an intermediate stage in the proceeding. The court further ordered that neither Davidson nor David and Lori were required to respond to further motions filed by Henning, Keedy & Lee unless the District Court directed them to do so.
¶ 23 Henning, Keedy & Lee then filed a second motion to compel payment of their attorney fees out of the Trust. Davidson responded and moved for sanctions, arguing that opposing counsel's motions practice was dilatory and costly, wasting the Trust's resources. The District Court ultimately struck the second motion to compel, stating, "This Court has previously denied the motion and there IS no new analysis or factual basis to alter that decision. Valentine's counsel is acting vexatiously and/or seeks multiple actions by the Court and multiple responses from the Defendants [sic] without legal or factual support contrary to prior rulings in this case." (Emphasis in original.) The court also assessed sanctions against Henning, Keedy & Lee, ordering it to pay one-third of the Special Master fees, and the attorney fees of Davidson and David and Lori for the fees incurred in drafting their responses to Valentine's second motion to compel payment. The District Court again ordered that neither Davidson nor David and Lori would need to respond to further motions filed by Henning, Keedy & Lee unless the court so directed.
¶ 24 After Dr. Moore examined Valentine and submitted a written report in which she opined Valentine lacked capacity, Davidson moved for summary judgment. Davidson argued it had reasonably relied upon Dr. Knight's opinion when it assumed trusteeship. Davidson also asserted it was reasonably concerned about the potential for Janice to exercise undue influence over Valentine. It also pointed out that Valentine had selected Davidson as Successor Trustee years prior to her alleged incapacity.
¶ 25 In support of the motion, Davidson filed two affidavits from O'Brien in which O'Brien asserted that, prior to any dispute about her capacity, Valentine had directed *931 O'Brien not to provide information about the Trust or Valentine's assets to Janice because Valentine feared Janice would pressure her into making changes to her estate plan to benefit Janice. O'Brien further stated Janice contacted her office shortly after Valentine moved to California and requested information about Valentine's estate, the Trust, and Valentine's powers-of-attorney. O'Brien stated she spoke to Valentine on the telephone twice after Valentine moved to California and on each occasion, Valentine sounded "very confused and agitated," and O'Brien heard people in the background prompting Valentine on what to say. O'Brien further stated when she met with Valentine in person to ***226 discuss possible changes to the Trust beneficiaries in August 2016, "While I still had remaining concerns regarding Valentine's competency, she appeared to know her family and basically understood what property she owned at the time of our last meeting."
¶ 26 Davidson also pointed to two letters Janice had written to Valentine. The first was one of the letters Janice had faxed to O'Brien's office after the death of Valentine's husband. In the second, written shortly before Valentine went to California, Janice urged Valentine to reallocate her estate so that Janice would receive significantly more assets than allotted to her under the First Amendment, and David and Lori would receive significantly fewer assets than allotted to them under the First Amendment. Davidson noted the disputed Second Amendment would accomplish the goals Janice set forth in that letter. Davidson further relied upon Dr. Moore's evaluation report, filed under seal, in which Dr. Moore found Valentine had no memory of negotiating or signing the Second Amendment and opined Valentine was easily swayed by others and was under the influence of either Janice, attorney Lee Henning, or both, and did not have decisional capacity, including testamentary capacity or the capacity to enter into contracts.
¶ 27 Davidson maintained it had acted reasonably in assuming the role of Successor Trustee. It asked the District Court to confirm Davidson had properly administered the Trust and that its costs and attorney fees could be properly assessed against the Trust. It further asked the court to dismiss all claims Valentine had asserted against it via Henning, Keedy & Lee.
¶ 28 In response, Valentine alleged Dr. Moore's report was biased. She claimed Dr. Moore had asked her to sign a document without reading it, and she further claimed Dr. Moore had called Davidson or Davidson's attorneys during her evaluation. She further argued her current mental status was not indicative of her mental status in early- to mid-2016 and thus could not be used as a basis to grant Davidson summary judgment.
¶ 29 On January 10, 2018, the District Court issued an Order Granting D.A. Davidson Trust Company's Motion for Summary Judgment; Denying Valentine Weisz's Motion for Partial Summary Judgment; and Awarding Attorneys' Fees Pursuant to Court's August 29, 2017, Sanction Order (Summary Judgment Order). The District Court found the Trust unambiguously named Davidson as Successor Trustee, and Davidson's decision to assume the role was consistent with the Trust's provisions for Valentine's incapacity. It further found Valentine's allegation Dr. Moore was biased was speculative and insufficient to create a genuine issue of material fact. It ruled Davidson had not ***227 breached any fiduciary duty, granted summary judgment in Davidson's favor, and found Davidson's costs and attorney fees were properly assessed against the Trust under § 72-38-709, MCA. The court further ordered Henning, Keedy & Lee to pay Davidson's and David's and Lori's attorney fees pursuant to the court's Sanctions Order. This appeal followed.
STANDARDS OF REVIEW
¶ 30 We conduct de novo review of summary judgment orders, performing the same analysis as does a district court pursuant to M. R. Civ. P. 56. Lorang v. Fortis Ins. Co. , 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186. Under M. R. Civ. P. 56(c)(3), judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a *932 matter of law. J & C Moodie Properties, LLC v. Deck , 2016 MT 301, ¶ 15, 385 Mont. 382, 384 P.3d 466 (citations omitted). The party seeking summary judgment bears the initial burden of establishing a complete absence of genuine issues of material fact. Lorang , ¶ 37. To satisfy this burden, the moving party must "exclude any real doubt as to the existence of any genuine issue of material fact" by making a "clear showing as to what the truth is." Lorang , ¶ 37 (citation omitted). If the moving party meets his or her burden of demonstrating a complete absence of genuine issues of material fact, the burden then shifts to the non-moving party to set forth specific facts, not merely denials, speculation, or conclusory statements, in order to establish a genuine issue of material fact exists. Lorang , ¶ 39 (citation omitted).
¶ 31 A district court's interpretation of a trust agreement presents a question of law, which we review for correctness. In re Charles M. Bair Family Trust , 2008 MT 144, ¶ 32, 343 Mont. 138, 183 P.3d 61 (citation omitted).
¶ 32 We review a district court's determination to award costs and fees under § 37-61-421, MCA, for an abuse of discretion. Larchick v. Diocese of Great Falls-Billings , 2009 MT 175, ¶ 39, 350 Mont. 538, 208 P.3d 836 (citations omitted).
DISCUSSION
¶ 33 1. Did the District Court err when it determined Davidson properly assumed the role of Successor Trustee and granted summary judgment in its favor?
¶ 34 Valentine contends the District Court erred in granting summary ***228 judgment in Davidson's favor because material facts remain in dispute. Valentine alleges the issue of her incapacity remains in dispute because she was not permitted to conduct full discovery into whether Dr. Moore's examination was truly independent and unbiased.
¶ 35 Valentine's allegation of a factual dispute lacks merit. The District Court found her allegation of bias wholly speculative. As the non-moving party, Valentine had the burden to set forth specific facts, not merely speculation. Lorang , ¶ 39 (citation omitted). On appeal, she has not met this burden.
¶ 36 Valentine further alleges the District Court erred in affirming Davidson's decision to assume trusteeship because the Second Amended Trust's incapacity provision requires a qualified physician to make such determination within 30 days of examination, and here, Dr. Knight examined her in December but did not opine she was incapacitated until March-more than 30 days later. She alleges Dr. Knight's opinion required "confirmation" before Davidson could assume the trusteeship, and the opinion was outdated when Davidson relied upon it. Valentine also alleges it was inappropriate for Davidson to rely upon Dr. Knight's opinion because Dr. Knight examined her in Montana and she was domiciled in California when Davidson determined she was incapacitated.
¶ 37 Davidson counters that Dr. Knight made his determination when he examined Valentine in December 2015, as memorialized in his contemporaneous chart note, and merely communicated that determination to Davidson in March 2016, at which time Davidson assumed its role as Successor Trustee. Davidson notes Valentine was domiciled in Montana at the time Dr. Knight examined her and determined she lacked capacity. Davidson contends no conflicting evidence existed regarding Valentine's incapacity at the time it assumed the trusteeship and, when conflicting evidence arose in August 2016, it filed the present action, seeking clarification from the District Court in accordance with the incapacity provision of the Second Amended Trust.
¶ 38 The incapacity provision contains the following pertinent requirements: "The determination of incapacity shall be made by a court of competent jurisdiction or by the Trustee, if the determination is confirmed in writing by a physician licensed to practice in the state of my domicile who has examined me 30 days before or after the determination." Pursuant to those requirements, Davidson determined Valentine lacked capacity after Dr. Knight, a physician licensed to practice in Montana, examined Valentine in December 2015-while Valentine was domiciled in Montana. As indicated in his ***229 contemporaneous *933 chart note, Dr. Knight determined at the time of his examination that Valentine lacked capacity. The fact that Dr. Knight wrote a letter to Davidson in March 2016, after Valentine had relocated to California, does not change the fact that the criteria of the incapacity provision had been met. Furthermore, nothing in the Trust's incapacity provision required Davidson to "confirm" Dr. Knight's opinion. Therefore, the District Court did not err when it validated Davidson's reliance on Dr. Knight's determination Valentine lacked capacity to assume the trusteeship.
¶ 39 Valentine further argues the District Court erred as a matter of law in concluding the incapacity provision of the Trust was met when Davidson assumed the trusteeship. She characterizes the incapacity provision as "very specific and carefully thought out and crafted instructions regarding a determination of her incapacity" and claims the court misinterpreted "the procedure that needed to be followed to determine of [sic] Valentine's incapacity." She argues, "These express terms of Valentine's Trust should control any determination of her incapacity." However, Valentine does not specify precisely how Davidson-and later the District Court-misinterpreted the incapacity provision. Although Valentine contends Davidson should have met with her either after it received Dr. Knight's letter, prior to assuming the trusteeship, or after receiving Dr. Helfat's report, the incapacity provision does not require it to do so. However, the incapacity provision does allow Davidson to seek a determination by a court, which is exactly what it did. While Valentine alleges Davidson failed to follow the incapacity provision's "unambiguous instructions," the incapacity provision requires none of these alleged failures. Rather, as Valentine herself argues, the express terms of the incapacity provision in the Trust controlled the determination of her capacity. The District Court did not err in determining Davidson had followed the requirements of the incapacity provision when it assumed the trusteeship and sought judicial instruction and approval.
¶ 40 Relying on § 72-5-315, MCA, Valentine next argues the Trust should pay the fees she has incurred with Henning, Keedy & Lee and she "is entitled to present evidence and cross[-]examine witnesses, including the physician and the visitor and have a trial by jury." However, § 72-5-315, MCA, which governs a person's entitlement to appointed counsel in a guardianship proceeding, has no applicability here. This matter only determines Davidson correctly assumed trusteeship; it does not otherwise adjudicate Valentine's rights nor is ***230 this matter a guardianship proceeding.[1] The District Court only determined the terms of the incapacity clause in the Second Amended Trust had been met, such that Davidson appropriately assumed the role of Successor Trustee.
¶ 41 Valentine further argues Davidson conflated the issues of capacity and undue influence in its summary judgment brief, and thus the District Court incorrectly conflated the issues as well. While the issues of capacity and undue influence are distinct from one another, Valentine does not explain how, specifically, the District Court conflated the two. She points to no language in the District Court's Summary Judgment Order in support of her theory.
¶ 42 After reviewing the summary judgment de novo, we are unpersuaded by the arguments Valentine has put forth on appeal. We therefore affirm the District Court's grant of summary judgment in Davidson's favor.
¶ 43 2. Did the District Court err when it denied Valentine's motion for partial summary judgment?
¶ 44 Valentine argues the District Court erroneously delayed ruling upon her motion for partial summary judgment and allowed additional evidence because of Drs. Knight's and Helfat's conflicting opinions regarding her capacity. She alleges Dr. *934 Moore's August 2017 evaluation has no bearing on whether she was incapacitated in March or August 2016. Valentine maintains Dr. Helfat's competency determination and her retention of Henning, Keedy & Lee are "undisputed facts" and the District Court erred in seeking additional evidence before ruling.
¶ 45 Valentine misapprehends what constitutes an "undisputed fact." It is true Dr. Helfat alleged Valentine was competent when he examined her, and Henning, Keedy & Lee alleged Valentine was competent when she hired them. However, the substance of these allegations are not themselves undisputed facts. The dispute over Valentine's capacity is the reason Davidson commenced this action.
¶ 46 Valentine argues neither Dr. Moore's nor Dr. Knight's opinions are relevant and the District Court erred in taking them into consideration in determining whether Davidson acted appropriately in assuming the trusteeship. While we understand Valentine prefers the opinion of Dr. ***231 Helfat, we have been unable to discern the basis of her position that his opinion is the only relevant opinion.
¶ 47 Valentine further asserts no one questioned her competency in August 2016, including O'Brien-who, according to Valentine, was "confident" Valentine had capacity. This misstates O'Brien's affidavit, in which O'Brien stated she had "remaining concerns" about Valentine's capacity.
¶ 48 Valentine further argues the District Court erred in refusing to rule on her motion for partial summary judgment until a neutral medical provider gave an opinion on her capacity. However, Valentine has also argued the District Court's ruling on Davidson's motion for summary judgment after Dr. Moore submitted her report was "premature" because Valentine wanted to conduct additional discovery into her alleged incapacity. We cannot reconcile these positions.
¶ 49 Valentine now also argues Davidson breached its duties under §§ 72-38-801 and -802, MCA, of the Montana Uniform Trust Code. Valentine did not raise this issue below. Thus, we do not consider it on appeal. Schlemmer v. N. Cent. Life Ins. Co. , 2001 MT 256, ¶ 22, 307 Mont. 203, 37 P.3d 63 (no consideration of new arguments raised on appeal because of the fundamental unfairness of faulting a district court for failing to rule correctly on an issue it had no opportunity to consider).
¶ 50 Valentine has not convinced this Court the District Court erred in denying her motion for partial summary judgment. We therefore affirm the District Court on this issue.
¶ 51 3. Did the District Court abuse its discretion when it ordered sanctions against Henning, Keedy & Lee?
¶ 52 An attorney or party to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct. Section 37-61-421, MCA. Here, the District Court sanctioned Henning, Keedy & Lee for filing their Second Motion to Compel Payment of Litigation Costs from Trust Funds after the District Court had ruled against the firm's first motion to compel payment. The sanctions consisted of ordering Henning, Keedy & Lee to pay one-third of the cost of the Special Master, and to pay the attorney fees Davidson and Lori and David incurred in responding to Henning, Keedy & Lee's motion.
¶ 53 We conclude the District Court abused its discretion in ordering these sanctions. Under § 37-61-421, MCA, a court may order sanctions "to satisfy personally the excess costs, expenses, and attorney fees ***232 reasonably incurred because of such conduct." Here, there were no costs or expenses of the Special Master incurred because of Henning, Keedy & Lee's motion. Thus, these costs were not properly awarded pursuant to the statute. Furthermore, the District Court had previously ruled neither Davidson nor David and Lori need respond to further filings from Henning, Keedy & Lee unless so directed by the court. In this instance, Davidson and David and Lori voluntarily filed responses to Henning, Keedy & Lee's motion without direction of the court. Since these responses were voluntary, the associated costs and attorney *935 fees incurred cannot be attributed to Henning, Keedy & Lee. Because the parties had no obligation to respond to Henning, Keedy & Lee's motion, the District Court abused its discretion when it ordered Henning, Keedy & Lee to pay Davidson's and David's and Lori's attorney fees. Therefore, we reverse the District Court's order of sanctions against Henning, Keedy & Lee.
CONCLUSION
¶ 54 We conclude the District Court did not err when it determined Davidson properly assumed the role of Successor Trustee and granted summary judgment in its favor. It further did not err when it denied Valentine's motion for partial summary judgment. However, we conclude the District Court abused its discretion when it ordered sanctions against Henning, Keedy & Lee and we reverse on that issue.
¶ 55 Affirmed in part and reversed in part.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.
DIRK M. SANDEFUR, J.

Valentine implicitly acknowledges § 72-5-315, MCA, does not apply here, arguing that if Davidson was truly acting in her best interests, it would have filed an action under this statute and thus caused the District Court to order Davidson to pay the attorney fees sought by Henning, Keedy & Lee.